COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JEREMY JEROME JOHNSON,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00151-CR



Appeal from


380th District Court


of Collin County, Texas


(TC # 380-82205-05)





O P I N I O N



 Jeremy Jerome Johnson appeals his conviction of aggravated sexual assault of a child. The
jury assessed punishment at twenty-years' confinement. For the following reasons, we affirm.

FACTUAL SUMMARY


 The complainant is nine-year-old A.J., Appellant's niece. At the time in question, Appellant
lived with his sister, Christy, and her nine-year old son, Calvarius. Jobethany Johnson was formerly
married to Christy and Appellant's younger brother. Jobethany has three children, A.J., Tyreek, and
Alyssia. 

 In February 2005, Christy and Jobethany left their children in Appellant's care while the two
women went out for the evening. Appellant, Calvarius, and A.J. were watching a movie while A.J.'s
siblings slept in Calvarius' bedroom. A.J. was sitting on Appellant's lap and Calvarius was sitting
next to them. At one point, Calvarius got up from the couch and moved in front of the television.

 According to A.J., Appellant reached over her body and slipped his hand into her underwear. 
His breath smelled like "the stinky smell after you have a couple of beers." A.J. tried to get up but
was unable to do so because Appellant held her back with his other arm. She described Appellant's
hand as being "sideways." A.J. stomped on Appellant's foot and was then able to get away. Once
he removed his hand from A.J.'s underwear, Appellant lifted his fingers to his nose and smelled
them. During this time, Calvarius had his back to A.J. and Appellant. 

 A.J. waited a few months before telling her cousin, Stephanie, about the incident. Stephanie
testified that A.J. told her in June that Uncle Jerald was messing with her. A.J. explained that the
incident occurred in February while everyone was asleep. "It was late at night, and she said it was
just him and her that was up, and she said that she sat in his lap and he had rubbed her in between
her legs." A.J. then told her mother, who notified the police. A.J. was taken to the Collin County
Children's Advocacy Center where she was interviewed by a forensic interviewer and evaluated by
a Sexual Assault Nurse Examiner (SANE). A videotape of the forensic interview was admitted into
evidence in which A.J. stated her uncle stuck his hand into her private. She felt some rubbing and
thought he was rubbing somewhere on top of or inside her private.

 Appellant brings four issues for review. The first three address evidentiary issues while the
latter complains that the trial court erred by not requiring the State to elect between offenses. 

SUFFICIENCY OF THE EVIDENCE


 In his first issue, Appellant argues the evidence is both legally and factually insufficient to
support his conviction. Our resolution of this issue requires that we answer one question. Was there
penetration?

Standards of Review


 In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light
most favorable to the verdict and determine whether a rational juror could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99
S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex.Crim.App.
2007). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts
in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate
facts." Hooper, 214 S.W.3d at 13, citing Jackson, 443 U.S. at 318-19, 99 S.Ct. 2181.

 In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral
light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis v.
State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due
deference to the fact finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the
testimony." See Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Thus, the question we must consider in conducting
a factual sufficiency review is whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the
fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Id. 

 Under the first prong, we cannot conclude that a conviction is "clearly wrong" or "manifestly
unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had
we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the
second prong, we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict, we must be able to say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury's verdict. Id. 

Aggravated Sexual Assault of a Child


 A person commits the offense of aggravated sexual assault of a child if he intentionally or
knowingly causes the penetration of the anus or sexual organ of a child by any means. Tex.Penal
Code Ann. § 22.021(a)(1)(B)(i)(Vernon Supp. 2007). Appellant contends the evidence is legally
insufficient because there was no evidence that he penetrated the female sexual organ with his finger. 
But A.J. testified that her uncle had stuck his hand into her private. She also testified she felt some
rubbing and thought the rubbing was somewhere on top or inside. While Appellant discounts her
testimony that the rubbing was "inside," we must consider it for purposes of a legal sufficiency
review. Thus, viewing the evidence in the light most favorable to the verdict, the evidence is legally
sufficient. Hooper, 214 S.W.3d at 13 (we must give deference to "the responsibility of the trier of
fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences
from basic facts to ultimate facts").

 Next, Appellant complains the evidence is factually insufficient because the contrary
evidence greatly outweighed any evidence of his guilt. He bases this argument on (1) the SANE
nurse's purported admission that A.J. never stated, "he put his fingers inside me"; (2) the forensic
examiner's testimony that A.J. told her Appellant had touched her on the outside; and (3) when
prosecutors asked A.J. if Appellant's hand stayed still or moved around she said, "No, it was
sideways." 

 Case law has established that the slightest penetration of the female sexual organ is sufficient
to prove penetration even though the vagina is not entered. See Vernon v. State, 841 S.W.2d 407,
409 (Tex.Crim.App. 1992); Sherbert v. State, 531 S.W.2d 636, 637 (Tex.Crim.App. 1976); Nilsson
v. State, 477 S.W.2d 592, 595 (Tex.Crim.App. 1972); Lopez v. State, 2006 WL 736976 at *4-5
(Tex.App.--El Paso 2006, pet. ref'd). Penetration occurs where the contact is more intrusive than
contact with the outer labia. See Vernon, 841 S.W.2d at 409; Lopez, 2006 WL 736976 at *4. 
Pushing aside and reaching beneath a natural fold of skin into an area of the body not usually
exposed to view, even in nakedness, is a significant intrusion beyond mere external contact, and is
sufficient to prove penetration. Id.

 A.J. told the SANE nurse, Carol Goldberg, that her uncle reached into her underwear, started
rubbing against her private, and it did not feel very good. Based on her training and experience,
Goldberg opined that if human fingers are placed on the outer lips of the vagina and are rubbing side
to side, there is a possibility they will separate the lips and cause penetration. She also admitted that
merely putting fingers on the female sexual organ may not cause penetration. We might find
Appellant's argument more persuasive if the record were limited to this testimony. A.J. informed the
forensic examiner that her uncle had stuck his hand inside her private. It is, of course, unlikely that
he inserted his entire hand. But it was reasonable for a jury to conclude that Appellant slipped his
hand into A.J.'s underwear and turned it "sideways." When he removed it, he raised two fingers to
his nose and smelled them. Reviewing all of this evidence in a neutral light, we must conclude it
is factually sufficient to support the conviction. See Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991)(the fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony"). We overrule Issue One.

EVIDENTIARY ISSUES


Standard of Review


 We review a trial court's decision regarding the admissibility of evidence for an abuse of
discretion. Rodriguez v. State, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006). Under this standard,
we are required to uphold the trial court's decision when it falls within the zone of reasonable
disagreement, and we may not reverse solely because we disagree with it. See id.

Extraneous Offense


 In his second issue, Appellant claims the trial court erred in admitting evidence of an
extraneous offense. Rule of Evidence 404(b) states:

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of
a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, provided
that upon timely request by the accused in a criminal case, reasonable notice is given
in advance of trial of intent to introduce in the State's case-in-chief such evidence
other than that arising in the same transaction.


Tex.R.Evid. 404(b). At issue is the testimony of Katrina Wright and her children Jamica Wright
and Jason Collins. The family lived next door to Appellant, Christy, and Calvarius. Jamica and
Calvarius were friends and Jamica sometimes stayed overnight at Appellant's home. While she was
sleeping, Appellant would awaken her and touch her with his hand. Jason testified that one night,
his mother told him to check on Jamica while she was at Appellant's home. Jason went next door. 
As he entered Calvarius' bedroom, he saw his sister sleeping on the top bunk while Appellant stood
beside her. He heard Jamica groan a couple of times and saw Appellant's hand in her underwear. 
Appellant told him to go back home and not speak of it.

 At the guilt/innocence phase of trial, Appellant testified :


 Q: Now Jeremy, you and I have talked about whether you would testify in this
case or not, correct?


 A: Yes.


 Q: And me trying to be a good lawyer, I told you there's a lot of risk and dangers
associated with it, right?


 A: Yes.


 Q: And I told you that you could get up here and talk, but then the prosecution
gets to ask you a bunch of questions you probably won't like, right?


 A: Yes.


 Q: And despite all that, you wanted to get up here and testify, correct?


 A: Yes.


 Q: Why did you want to testify so badly? What did you want to tell this jury? 
Look at them and tell them.


 A: I have nothing to hide. I shouldn't fear no man but God. I mean, I'm nervous
as I don't know what, but I've got to get up here and speak for myself
because if I don't, who's going to speak for me. 


 I could have a thousand witnesses get up here and say how good of a guy I
am, and it's not going to make a difference if I don't get up here and speak
for myself. 



 The State argued outside the presence of the jury that Appellant had opened the door to
questioning about other incidents of molestation. The prosecutor sought to cross-examine Appellant
about his familiarity with the witnesses and then--depending upon his responses--they would then
be called as rebuttal witnesses. (1) All told, the State offered three reasons why the testimony was
admissible: (1) to correct the false impression about the extent of Appellant's prior trouble with the
police, (2) (2) to rebut Appellant's defensive theory that A.J. lied about the assault to please her
mother, (3) and (3) to establish that the incident was intentional and not an accident or a mistake. 
However, the jury was charged only as to the third ground:

 You are further instructed that if there is any testimony before you in this trial
regarding the defendant's having committed extraneous conduct, acts, or offenses
other than the offense alleged against him in the indictment, you cannot consider said
testimony for any purpose unless you first find and believe beyond a reasonable
doubt that the defendant committed such other offenses, if any were committed, and
even then you may only consider the same in determining the motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of duress, mistake or
accident, if any, in connection with the offense, if any alleged against him in the
indictment in this case. You cannot consider said testimony for purposes of showing
general character conformity on the part of the defendant, or that he acted in
conformity therewith, except for determination of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of duress, mistake or accident, if
any, in connection with this offense, if any alleged against him in the indictment in
this case, and for no other purpose.


Therefore, we will limit our review to that theory. See Owens v. State, 827 S.W.2d 911, 917
(Tex.Crim.App. 1992)(even assuming a defensive theory was raised at trial, it was not presented
before the jury in the trial court's limiting instruction; absent such additional instruction, there is no
way for an appellate court to know whether the jury properly applied the evidence or relied on it for
an improper basis such as character conformity); Prescott v. State, 744 S.W.2d 128, 133
(Tex.Crim.App. 1988)(the limiting instruction given in the charge to the jury did not limit the use
of defendant's prior felony conviction to impeachment only; the trial court erroneously overruled
such request by defense counsel); Curtis v. State, 89 S.W.3d 163, 170-71 (Tex.App.--Fort Worth
2002, pet. ref'd)(jury was not instructed to consider the extraneous offense evidence to rebut
defendant's defensive theory or as evidence of consciousness of guilt, therefore, appellate court only
addressed whether evidence was properly admitted on at least one of issues which jury was
instructed).

 With regard to accident or mistake, Appellant testified:


 Q: Well, you said that [A.J.] was on your lap at one point?


 A: Yes.


 Q: Did anything happen there that maybe she could have misinterpreted
somehow; do you remember?


 A: I don't think so, no.


. . .



 Q: Okay. Now when she was sitting on your lap, that's when she said you stuck
your hand down her pants underneath her underwear and tried to touch her. 
Did anything happen like that? I mean, did you move your hand around on
her for any reason?


 A: Like grabbing her, like a bear hug or something like that.


 Q: Okay, like playing around?


 A: Yes.


 Q: Well, I mean, is this something you also do with Calvarius, play around with
him like that?


 A: Yes. 


These statements suggest that Appellant routinely "played around" with other children, that any
inappropriate touching was accidental, and that A.J. misunderstood when he "grabbed" her "like a
bear hug." Christy bolstered this theory when she testified that Appellant was frequently with A.J.'s
cousins, that she had not heard of Appellant misbehaving with any of them, and that she did not
believe A.J.'s allegations. Appellant clearly placed his "playing around" in issue, and then
emphasized it by proclaiming that he had "nothing to hide." We perceive no abuse of discretion in
the admission of the extraneous offenses to establish that the touching was not merely accidental. 
Rodriguez, 203 S.W.3d at 841(we are required to uphold the trial court's decision when its decision
is within the zone of reasonable disagreement). We overrule Issue Two.

Hearsay


 In his third issue, Appellant complains that nurse Goldberg was allowed to testify about
statements A.J. made to her. This occurred when the trial court permitted her to read a transcription
of A.J.'s statements to the jury.

 Hearsay is a "statement, other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted." Tex.R.Evid. 801(d). Hearsay
is not admissible except as provided by statutes or rules. Tex.R.Evid. 802. Rule 803(4) provides
an exception for: 

 [s]tatements made for purposes of medical diagnosis or treatment and describing
medical history, or past or present symptoms, pain, or sensations, or the inception or
general character of the cause or external source thereof insofar as reasonably
pertinent to diagnosis or treatment.


Tex.R.Evid. 803(4). This exception is based on the assumption that the patient understands the
importance of being truthful with medical personnel to receive an accurate diagnosis and treatment. 
Beheler v. State, 3 S.W.3d 182, 189 (Tex.App.--Fort Worth 1999, pet. ref'd). 

 The presumption of reliability that forms the basis for this exception may break down if very
young children do not understand the importance of being truthful. Id. "Nevertheless, there is no
requirement that a witness expressly state that the hearsay declarant recognized the need to be
truthful in her statements for the medical treatment exception to apply." Id. Rather, the reviewing
court must look to the record to see if it supports the conclusion that the young child understood why
she needed to be honest when speaking to the caregiver. Id. It is not necessary for the witness to
have used magic words, such as, "diagnosis" or "treatment." Id. It is sufficient that the evidence
reflects the statements were made for the purpose of medical diagnosis and treatment. Id. 

 Goldberg testified that one of the first steps of the SANE exam is to take a history in writing
of everything the child says. The purpose is to determine if the child is in need of further medical
assistance, such as emergency treatment or counseling which the center provided. Absent the oral
history, Goldberg would not know whether anything was physically wrong with the child and if so,
the nature of the problem. At trial, Goldberg read A.J.'s statement:

 At Aunt Christy's home we were watching Shrek II and my Uncle Jerald put his hand
on my stomach. I tried to move to the other couch. He got into my underwear and
he started rubbing against my privates and it didn't feel very good. I said 'Stop it'
real loud and he didn't say nothing. I told my cousin, Stephanie, and then I told my
Mommy. I didn't tell Mommy first, because I thought she might be mad at me, but
I just couldn't keep it inside.


Goldberg mentioned that A.J. corrected her on how to spell "Shrek" and if she made any other
mistakes, A.J. was able to correct her. 

 Appellant likens Goldberg's testimony to the case of Salinas v. State, 166 S.W.3d 368
(Tex.App.--Fort Worth 2005, pet. ref'd). There, the Fort Worth Court of Appeals determined the
doctor was allowed to testify that she diagnosed sexual abuse based solely upon the history provided
by the complainant. Id. at 370. But Goldberg did not make a diagnosis of sexual assault based upon
A.J.'s testimony. Because the object of the sexual assault exam is to ascertain whether the child has
been sexually abused and to determine if further medical attention is needed, statements describing
acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment. See Beheler, 3
S.W.3d at 189. Finding the trial court's ruling to be within the zone of reasonable disagreement, we
find no abuse of discretion. We overrule Issue Three.

ELECTION


 Finally, Appellant argues the trial court erred in failing to require the State to elect between
offenses. Appellant was charged in one indictment on Count I (aggravated sexual assault of a child)
and Count II (indecency with a child) that arose from the same transaction. Because the evidence
only shows one criminal act against the same victim, Appellant maintains the State was not entitled
to seek conviction of both aggravated sexual assault of a child and indecency with a child. 

 The Court of Criminal Appeals has determined that where only one offense is committed by
the defendant, the State should elect to proceed with either aggravated sexual assault or indecency
with a child, or, in the alternative, to submit the offense of indecency with a child as a lesser-included offense of aggravated sexual assault. Ochoa v. State, 982 S.W.2d 904, 907-08
(Tex.Crim.App. 1998). Here, the charge read:


 Unless you so find from the evidence beyond a reasonable doubt or if you have a
reasonable doubt thereof, that the defendant is guilty of Aggravated Sexual Assault
of a Child, you will acquit the defendant of Aggravated Sexual Assault of a Child and
next consider the following:



COUNT II



INDECENCY WITH A CHILD



 Now, if you find from the evidence beyond a reasonable doubt that on or about the
7th day of February, 2005, in Collin County, Texas, the defendant, JEREMY
JEROME JOHNSON, did then and there intentionally or knowingly, with the intent
to arouse or gratify the sexual desire of said defendant, engage in sexual contact by
touching part of the genitals of [A.J.], a child younger than seventeen (17) years of
age and not the spouse of the defendant, by means of defendant's hand, then you will
find the defendant guilty of Indecency with a Child as charged in the indictment.


 If you find from the evidence beyond a reasonable doubt that the defendant is guilty
of Aggravated Sexual Assault of a Child or Indecency with a Child, but you have a
reasonable doubt as to which offense he is guilty, then you must resolve that doubt
in the defendant's favor and find him guilty of the lesser offense of Indecency With
a Child.


 Unless you so find from the evidence beyond a reasonable doubt or if you have a
reasonable doubt thereof that the defendant is guilty of any offense defined in this
charge, you should acquit the defendant and say by your verdict 'not guilty.'

 

Based upon the jury charge, the State submitted indecency with a child as a lesser-included offense. 
Ochoa, 982 S.W.2d at 908. Finding no error, we overrule Issue Four and affirm the judgment of the
trial court.


May 22, 2008 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The State argued at trial, "It's being offered for rebuttal purposes because this Defendant has placed his
character in controversy by taking the stand. . . . So this evidence is offered for rebuttal purposes because this Defendant
has opened the door as to his character."
2. Appellant testified that his only criminal history involved a few driving-related offenses. 
3. Jobethany purportedly held a grudge against Appellant because he covered for her husband's infidelity during
their marriage.