# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00451-CR

**Derrick Leon Rowell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 61950, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Derrick Leon Rowell guilty of possession of cocaine, *see* Tex. Health & Safety Code Ann. § 481.115 (West 2003), and assessed punishment at thirty years' imprisonment. In his sole point of error, Rowell argues that the trial court erred in admitting, during the punishment phase, the testimony of a police officer on the impact of cocaine use on the community. Because we hold that the admission of this testimony was harmless error, we affirm the trial court's judgment and sentence.

## BACKGROUND

Around 2:30 a.m. on September 6, 2007, Officer Miguel Mirabel of the Killeen Police Department observed Rowell looking into vehicles in what the officer described as a high-crime area of Killeen. Mirabel approached Rowell and began to question Rowell about why he was in the area. Mirabel testified that he asked for Rowell's name and identification and Rowell produced a

driver's license for a Jonathan Williams. Because the driver's license did not appear to be Rowell's, Mirabel began to quiz Rowell about the information on the driver's license. Mirabel testified that, when Rowell was unable to answer the questions, "I went to detain him further to find out who he really was." Rowell began to run and a chase ensued. Mirabel called for back-up, and Officer Eric Stock responded to the call and detained Rowell. Once Mirabel caught up with the men and confirmed that Stock had detained the correct suspect, Rowell was arrested for giving a false identification to a peace officer and evading arrest. After placing Rowell under arrest, Stock searched Rowell and found two rocks of crack cocaine in Rowell's pocket.

A jury found Rowell guilty of possession of cocaine in an amount of four grams or more but less than 200 grams. *See id.* At the punishment stage, the State introduced evidence that Rowell had seven prior convictions: three prior felony convictions in South Carolina—possession of crack cocaine with intent to deliver, receiving stolen goods worth over $1,000 but less than $5,000, and burglary; two prior misdemeanor convictions in South Carolina—failure to stop for a blue light and driving under suspension; and two prior misdemeanor convictions in Texas—criminal mischief and driving with an invalid license. The State also introduced extraneous-acts evidence that, in May 2007, Rowell was found with a digital scale in his pocket that had cocaine residue on it. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2008) (authorizing admission at sentencing of "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant . . . regardless of whether he has previously been charged with or finally convicted of the crime or act"). In addition, Drew Pence, a lieutenant with the criminal investigations unit of the Killeen Police Department, testified, over defense

2

objections, concerning the crack cocaine drug trade and collateral crimes committed in Killeen by those who deal and use crack cocaine. Pence testified that cocaine addicts often commit other crimes, such as theft and fraud, in order to support their drug habit. Pence also testified that many of the crimes committed in the Killeen area—both crimes against property and crimes against people—are connected to narcotics use.

Rowell testified on his own behalf at the punishment stage of trial. He admitted that he had been addicted to cocaine, but denied that the rocks of crack cocaine that Officer Stock found on September 6, 2007, were his. Rowell claimed that he had borrowed someone else's clothes and that he did not realize that the cocaine or the driver's license were in the pants pockets.

## STANDARD OF REVIEW

We review a trial court's decisions regarding the admissibility of evidence for an abuse of discretion. *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g). A trial court's ruling should only be reversed as an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Rodriguez*, 203 S.W.3d at 841; *Robbins v. State*, 88 S.W.3d 256, 259-60 (Tex. Crim. App. 2002). Trial courts have broad discretion in their evidentiary rulings because "trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

An erroneous admission of evidence will only result in reversal if that error affected a substantial right of the defendant. *See* Tex. R. App. P. 44.2(b); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.) (erroneous admission of evidence is not constitutional error).

3

A substantial right is affected when the evidence, viewed in light of the record as a whole, had a substantial and injurious influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

## DISCUSSION

Rowell argues that the trial court erred in admitting Lieutenant Pence's testimony at sentencing regarding the impact of cocaine use on the community. When the State first began to question Pence, Rowell's trial counsel objected. He reasoned, "[I]t appears that the prosecution is seeking to show that drugs are a big problem in Killeen, Texas. Okay. We admit that would be relevant with regards to sentencing," but contended that testimony as to drug distribution and other drug-related crimes in the community should be excluded under Rule 403. *See* Tex. R. Evid. 403 (providing for exclusion of relevant evidence when probative value is substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury"). Defense counsel argued that such testimony was not particularly probative or necessary, "as it's really a matter of common knowledge," but that it was highly prejudicial because it would encourage the jury to punish Rowell for other people's crimes. The court overruled Rowell's objection, and the following exchange then took place:

> Q: Is there a problem with the trafficking, use, sale, and distribution of crack cocaine within Killeen?
>
> A: Yes, there is.
>
> Q: All right. When you say there's a problem, what do you mean by that?

4

A:    Well, I mean, it's not just a problem of the crack itself. The crack cocaine leads to other issues, other crimes. Generally, people that use crack cocaine, sell crack cocaine, don't have legitimate regular jobs. So, therefore, when they need money, they are not selling their crack cocaine, or if they are using, they just need to buy crack cocaine, they'll find another way to get money. That usually involves committing other acts; thefts, burglaries, ID theft, fraud, those type of crimes, robbery.

Q:    You indicate that you're a lieutenant over the criminal investigation division?

A:    Yes, sir.

Q:    So that includes, not only narcotics that we're speaking about, but crimes against people?

A:    Yes, sir.

Q:    Such as murders and robberies, and crimes against property such as thefts and burglaries?

A:    That's correct.

Q:    Now, when narcotics search warrants are executed, especially ones involving crack cocaine, are there detectives from the property unit, from the crimes against persons unit, that sometimes go along with the narcotics detectives when they execute these search warrants?

A:    Yes. The Killeen Police Department [has] created a burglary unit within the last few months. Because of the narcotics guys constantly running across what appears to be stolen property, we instituted a policy where a burglary unit detective now accompanies the narcotics unit on every search warrant that they conduct.

Q:    All right. And, again, why is that?

A:    Again, because drug dealers are involved in a myriad of criminal activity. One of them happens to be burglary. They're not actually committing the burglaries themselves. They may take burglary property in exchange for drugs. So that's why a lot of times we'll run across the stolen property.

5

Q:      So, oftentimes, at scenes of search warrant executions on crack dealers you'll find stolen property?

A:      Well, we always find what appears to be stolen property. It's just because of the way it's reported. A lot of it's not—the average person just doesn't have the serial numbers for their things, so, therefore, they are not in NCIC or TCIC. However, it appears to be stolen property. So yes, we do run across it a great many times.

The prosecution then questioned Pence on the process of making and distributing crack cocaine and how and why a dealer would use a digital scale like the one found in Rowell's possession, before returning to the subject of other crimes committed by crack cocaine users and dealers:

Q:      Now, we spoke about some of the crimes that come from distribution of crack in the Killeen area. Does that involve prostitution?

A:      Yes, it does.

Q:      You have already indicated that individuals who are hooked on crack cocaine don't really have regular jobs?

A:      Yes, sir.

Q:      And they need to get money to support their habit?

A:      Uh-huh. Yes, sir.

Q:      All right. When you get a woman who's a crack addict, do you often see prostitution coming from that?

A:      Yes, sir. You know, we—we conduct regular prostitution operations in Killeen, and the vast majority of prostitutes, male and female, are crack cocaine addicts.

. . . .

Q:      Many of the other crimes you investigate for murders and property crimes, burglaries, do they often have an element of narcotics?

6

A:     Yes, sir.

Q:     By the people involved in the crimes?

A:     Yes, they do.

At the close of Pence's testimony, defense counsel renewed his objection and asked that Pence's testimony be stricken from the record.[1]  The trial court denied his request.

On appeal, Rowell argues that the trial court abused its discretion in admitting this testimony and that this error harmed the defendant by causing the jury to punish Rowell more harshly.  We will examine each contention in turn.

*Did the Trial Court Err in Admitting Pence's Testimony?*

At the punishment stage of trial, the State may offer evidence "as to any matter the court deems relevant to sentencing."  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).[2]  Because

---

[1]  We note that, while Rowell made a general objection in anticipation of Pence testifying to the effect "that drugs are a big problem in Killeen, Texas," he did not object again when Pence began testifying to the specific types of crimes that are commonly committed by drug users, nor did he request a running objection.  However, he did renew his objection at the end of Pence's testimony, and the State does not argue on appeal that the complaint was not preserved.

[2]  Article 37.07 does not define the term "relevant."  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2008).  However, the statute provides that evidence relevant to sentencing includes, but is not limited to:

• the prior criminal record of the defendant;

• his general reputation;

• his character;

• an opinion regarding his character;

by and large there are no discrete factual issues at the punishment stage, admissibility of evidence at sentencing is more a function of policy than of applying the traditional definition of relevance. *Miller-El v. State*, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990); *see also Rodriguez*, 203 S.W.3d at 842. "Determining what is relevant then should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez*, 203 S.W.3d at 842.

Rowell concedes that Pence's testimony regarding the impact of cocaine use on the community of Killeen was relevant to the jury's task of determining the appropriate sentence. However, otherwise relevant and admissible evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Tex. R. Evid. 403. Rowell contends that Pence's testimony regarding the collateral crimes of drug use—including theft, burglary, fraud, prostitution, and murder—should have been excluded under Rule 403 because it encouraged the jury to punish Rowell for crimes for which he was not on trial. We agree with Rowell.

In conducting a Rule 403 balancing test, the court of criminal appeals has held that we may consider: (1) the probative value of the evidence; (2) the potential of the evidence to

- the circumstances of the offense for which he is being tried; and

- notwithstanding Rules 404 and 405, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*Id.*; *see also* Tex. R. Evid. 404, 405.

8

impress the jury in an irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Rodriguez*, 203 S.W.3d at 843.

Looking to the first factor of the balancing test, the probative value of Pence's testimony was weak. Pence's statements regarding cocaine users and what "they" normally do to subsidize their drug habit were overly general and not closely linked to the appellant's particular offense. *See Ewes v. State*, 841 S.W.2d 16, 18 & n.1 (Tex. App.—Dallas 1992, pet. ref'd) (stating that testimony and argument in drug possession case regarding "the 'drug world' . . . have no relevance whatsoever to the facts of this case and are improper"); *cf. Salazar v. State*, No. 14-06-00613-CR, 2006 Tex. App. LEXIS 4159, at *9 (Tex. App.—Houston [14th Dist.] May 16, 2006, pet. ref'd) (not designated for publication) (error to admit expert testimony at punishment regarding potential symptoms of sexual abuse that were not exhibited by victim in case); *Brooks v. State*, 961 S.W.2d 396, 399 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (victim impact evidence admissible if it has "a close, direct link to the circumstances of the offense"). Rowell was found guilty of possession only, not delivery or possession with intent to deliver. *See Stewart v. State*, 874 S.W.2d 752, 756 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that police officer's testimony regarding drug trafficking was inadmissible in drug possession case); *Williams v. State*, 777 S.W.2d 732, 733 (Tex. App.—Beaumont 1989, no pet.) (holding that prosecutor's argument at punishment phase of possession case that defendant was dealing drugs was improper). Rowell was not found with apparently stolen property, as Pence claimed the Killeen police investigators "always find" when arresting drug dealers. Rowell was not in possession of any weapons at the time he was arrested, and there is nothing in the record to suggest that Rowell has ever committed fraud,

9

prostitution, or murder—or any other violent crime. There is nothing in the record to suggest that Rowell sold cocaine to drug addicts who committed such crimes. *Cf. Rodriguez*, 203 S.W.3d at 842 (evidence of crimes committed by prisoners after defendant helped them escape was probative of defendant's moral culpability). Thus, Pence's testimony is not especially probative of Rowell's personal responsibility and moral guilt or helpful to the jury in tailoring Rowell's sentence to Rowell's offense. *See id.* (question of relevance at sentencing is question of "what is helpful to the jury in determining the appropriate sentence for a *particular* defendant in a *particular* case") (emphases added); *cf. Boone v. State*, 60 S.W.3d 231, 238 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("Whether victim impact testimony is deemed relevant depends on whether the testimony has some bearing on the defendant's personal responsibility and moral guilt."). The first factor therefore weighs against admitting the testimony.

We next balance the weak probative value of Pence's testimony against the substantial risk that the evidence will impress the jury in an irrational, but nevertheless indelible way by encouraging them to punish Rowell for crimes committed by other drug users and dealers. It is a fundamental tenet of our justice system that an accused may be tried only for the offense for which he is charged and not for a general propensity to commit crimes. *See Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998). Pence's testimony violated this tenet by suggesting that all drug users are career criminals who habitually commit other, more serious crimes. Pence's testimony that other crimes—such as murder, prostitution, and burglary—"often" include "elements of narcotics" suggested that Rowell was morally culpable for much of the crime committed in Killeen, rather than only for the crime with which he was charged. *See Ewes*, 841 S.W.2d at 18 (testimony regarding

10

drug-related murders at sentencing for drug possession "tended to confuse the punishment issues before the jury"). Therefore, the second factor also weighs against admitting the testimony.

The third factor, on the other hand, weighs in favor of admitting the testimony. The State did not need a large amount of time to develop the evidence. The portion of Pence's testimony dedicated to the other crimes committed by cocaine users and dealers was relatively brief and made up only four pages of the trial transcript.

The final factor identified by the court of criminal appeals, the force of the State's need for the evidence, was weak and thus weighs against admitting the testimony. The State and Rowell both note that it is common knowledge that the drug trade is a major problem in Killeen and that drug use can lead to other crimes. The State did not need to call Pence to testify to this fact. Further, the State had evidence of Rowell's previous criminal activity, which was significantly more probative of Rowell's personal responsibility and moral culpability than was testimony regarding collateral crimes committed by other unnamed drug users and dealers.

Three of the four factors in the balancing test weigh against admitting the testimony. We hold that the potential for prejudice substantially outweighs the probative value of the testimony and that the admission of Pence's testimony regarding crimes not linked to Rowell was erroneous and an abuse of discretion. Having found error, we now turn to the question of whether this error harmed the defendant and thus warrants reversal.

*Was the Error Harmful?*

Rowell argues that the error was harmful under *Ewes*. 841 S.W.2d at 19. However, *Ewes* was decided under a different standard, under which the court of appeals reversed unless it

determined beyond a reasonable doubt that the error did not contribute to the accused's punishment. *Id.* (citing former Tex. R. App. P. 81(b)(2)). Under the current rules of appellate procedure, we reverse on the basis of a non-constitutional error only if we determine that the evidence had a substantial and injurious influence in determining the jury's verdict. *Roethel*, 80 S.W.3d at 281; *King*, 953 S.W.2d at 271. We assess the injurious influence of evidence at the punishment phase by asking whether the defendant received a longer sentence as a result of the erroneously admitted evidence. *See Ivey v. State*, 250 S.W.3d 121, 126 (Tex. App.—Austin 2007), *aff'd*, 277 S.W.3d 43 (Tex. Crim. App. 2009).

Rowell was found guilty of possession of cocaine in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.115. Normally, this is a second degree felony, carrying a punishment range of two to twenty years' imprisonment. *Id.*; Tex. Penal Code Ann. § 12.33 (West 2003) (punishment range for second degree felony). However, because Rowell was charged as a repeat offender and pleaded true to his prior convictions, his punishment range was increased to that of a first degree felony, which is five to ninety-nine years' imprisonment or life. *See* Tex. Penal Code Ann. § 12.32 (West 2003) (punishment range for first degree felony), § 12.42(b) (West Supp. 2008) (penalties for repeat felony offenders). The prosecution requested that the jury give Rowell at least forty years' imprisonment. The jury assessed punishment at thirty years' imprisonment.

Considering the record as a whole, we cannot say that Rowell received a longer sentence as a result of Pence's testimony. As noted above, Pence's testimony regarding the other crimes committed by cocaine users and dealers was brief—less than four pages of the trial transcript.

12

Aside from this testimony, there was abundant evidence on which the jury could have based its assessment of punishment. The State introduced evidence that Rowell had previously been convicted of three felonies in South Carolina—possessing crack cocaine with intent to deliver, receiving stolen goods, and burglary. He also committed two misdemeanors in South Carolina—failure to stop at a blue light, and driving under a suspended license. After serving prison time in South Carolina, Rowell moved to Texas. The jury learned that he soon ran into trouble with the law again and was convicted of criminal mischief and driving with an invalid license. The State also introduced evidence that, in May 2007, Rowell was found with a digital scale in his pocket that had cocaine residue on it, resulting in Rowell being charged with possession of a controlled substance; while he was out on bond for that offense, he was arrested for the offense at issue in this case. Rowell's own criminal history likely swayed the jury much more than did Pence's testimony. In addition, Rowell's tendency to commit crimes soon after being released from prison likely contributed to the jury's assessment of a significantly longer prison sentence for this offense.[3]

Further, similar evidence regarding the types of crimes committed by drug users had already been admitted during the guilt-innocence stage through the testimony of Mirabel, who testified, without objection, as follows:

A:     Downtown Killeen is known for high narcotics activity, burglary of habitations, burglary of motor vehicles. Narcotics and prostitution is a whole

---

[3] Rowell's own testimony at the punishment stage—his complete denial of culpability and his rather incredible story about his borrowed pants—may have also contributed to the length of his sentence.

> realm, assaults. It's extremely high in the downtown area compared to other parts of the city.

Q: All right. Do a lot of the crimes you just mentioned, the prostitution, the break-ins, the burglaries, the assaults, do a lot of those other crimes stem from narcotics?

A: They could, sir.

The prosecution also referenced the collateral crimes of the drug trade in its opening and closing statements at guilt-innocence and during jury voir dire—all without objection from Rowell. For example, in the context of asking if any venire panel members believed that drugs should be legalized, the State told the panel:

> When we talk about high crime areas, we talk about areas where drugs are. Because, as you folks know by your common sense, that's what lead to burglaries, home invasions, break-ins, robberies, thefts. I call that the collateral effects of drugs on society. The other crimes that are created by those addicts to support their habit.

Thus, the issue of other crimes committed by drug users and dealers was before the jury well before Rowell objected to Pence's testimony, making Pence's testimony merely cumulative.

Finally, the error is harmless because, as acknowledged by Rowell at trial, the negative impact of drug use on the community is common knowledge. During voir dire, the prosecution asked, "Does anyone here know someone, either yourself or very close friend or a loved one, who's been affected by illegal drugs?" Twenty-eight venire panel members indicated that they did. Later, the prosecution asked how many panel members "knew someone was addicted to drugs and committed other crimes to support their drug habit, such as breaking into homes, breaking into cars, stealing from employers, stealing from family members?" He then continued, "Look around

14

at all those numbers, folks. I won't count them. There must be about 20." The venire panel's response demonstrates that the jury was likely aware of the collateral crimes committed by drug users before Pence testified to the issue; therefore, we conclude Pence's testimony had little practical effect.

Considering all of the evidence before the jury, we find at least a fair assurance that Pence's testimony did not influence the jury's assessment of punishment or that, if it did, the effect was slight.[4] *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) ("[S]ubstantial rights are

---

[4] More troubling to this Court is the State's argument at sentencing that Rowell was dealing cocaine, when he was only charged and convicted of the lesser offense of possession:

> Draw your own deductions. You can deduct that he's dealing. Based upon his prior activities and his activities and his ridiculous explanations for why he had the scale and how the four grams got in his pocket, you could deduct logically that he was involved in dealing. *And you could punish that conduct*.

(Emphasis added.) *Compare* Tex. Health & Safety Code Ann. § 481.112(d) (possession of four to twenty grams with intent to deliver), *with* § 481.115(d) (possession of four to twenty grams) (West 2003). At least one court of appeals has concluded that such an argument is both improper and prejudicial:

> There is an obvious legal difference between one who possesses an illegal substance for his own use and a person who delivers or 'runs' drugs. Not only is there a legal difference, there is a difference in the public's mind. The public views a drug dealer or drug pusher or drug runner differently than a drug user. The former is intending to prey on the ignorance and/or weakness of others, while the latter only abuse their own selves. Consequently, the public generally (and they should) metes out harsher punishment for drug dealers. Therefore, if a prosecutor can make any kind of inference to a jury that a possessor is really a dealer, then there is a likelihood the punishment will be increased.

*Williams v. State*, 777 S.W.2d 732, 733-34 (Tex. App.—Beaumont 1989, no pet.). However, Rowell did not object to this line of argument, and therefore the issue is not preserved for appeal. *See* Tex. R. App. P. 33.1(a).

not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000))).  Therefore, we hold that the error was harmless.  We overrule Rowell's single point of error.

## CONCLUSION

Because we find no reversible error, we affirm the trial court's judgment and sentence.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:  May 14, 2009

Do Not Publish