# NO. 12-09-00170-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FREDERICK SMITH,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Frederick Smith appeals his conviction for possession of a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams. On appeal, Appellant raises two issues. We affirm.

## BACKGROUND

Appellant was charged by indictment with possession of a controlled substance, cocaine, in an amount of four grams or more but less than 200 grams, including any adulterants and dilutants.[1] The indictment also included an enhancement paragraph, alleging that Appellant had been convicted of a felony prior to the commission of the charged offense.[2] Appellant pleaded "guilty," and elected for the jury to assess punishment. The jury assessed Appellant's punishment at life imprisonment.

## IMPLICATION OF DRUG DEALING

In his first issue, Appellant argues that the trial court erred in allowing the State to elicit testimony that Appellant, by implication, was a drug dealer. The State did not file a brief.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (Vernon 2010).

[2] An offense under section 481.115(d) is a second degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). Appellant pleaded true to the enhancement allegation that he had a prior felony conviction. Because the enhancement allegation was found to be true, Appellant was punished for a first degree felony. *See* TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2010). An individual adjudged guilty of a first degree felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five years and, in addition, a fine not to exceed $10,000. TEX. PENAL CODE ANN. § 12.32 (Vernon Supp. 2010).

**Facts**

Leland Shawn Johnson, a patrol officer for the Smith County Sheriff's Department, and John Shoemaker, a deputy for the Smith County Sheriff's Department, stated that, on December 14, 2008, Appellant was a passenger in a vehicle that they stopped for a traffic violation. After searching the driver of the vehicle, Johnson asked to search Appellant, but Appellant refused. After placing Appellant in hand restraints, Shoemaker discovered a plastic baggie containing a white rock substance in Appellant's left jacket pocket. According to Johnson, the baggie contained crack cocaine. Shoemaker also discovered that Appellant had two metal pipes which, Shoemaker stated, are used to smoke crack cocaine. Shoemaker testified that the area was a "high drug traffic area," while Johnson stated that it was "a very high narcotics and prostitution area." Johnson stated that a field test conducted at the jail revealed that the substance was cocaine. Sharla McCloskey, a forensic scientist at the Texas Department of Public Safety crime laboratory, testified that the baggie contained 6.47 grams of cocaine, including adulterants and dilutants.

The State asked Johnson if the rock "could [] be split up for sale." Johnson testified that "[i]t could be, yes." Appellant objected, citing "speculation," but the trial court overruled the objection, stating that Johnson could answer based on his training and experience. Further, the State asked Johnson if the size of the rock might preclude it from being "used just for personal use, just for one person that night?" Johnson replied that "I wouldn't think so, no." Later, the State asked Johnson if the crack cocaine found on Appellant was "an amount that somebody would use for personal use, or is this more something that somebody would use later on or for sale?" Appellant again objected, stating that was "speculation." The trial court overruled his objection, stating that Johnson could answer based on his training and experience. Johnson answered that he "would have to say that someone buying that large of a rock was probably going to end up selling it later on." Then the State asked if Johnson knew how much the cocaine would sell for "if somebody were to cut a piece of that crack cocaine into a smaller piece to sell to somebody." Again, Appellant objected, stating that "[t]here's been no predicate laid that [Johnson] has any knowledge of that." The trial court overruled Appellant's objection, again stating that the officer may answer the question based on his background, qualifications, training, and experience. Johnson stated that, in his experience, "you can get a cocaine rock for about $20, but to say how much you could

2

break that up into and sell, I can't answer that." The State also asked Johnson if, based on his training and experience, drugs were responsible for other crimes. Johnson stated that "[t]hey can be, yes." Then the State asked him what other kind of crimes and he replied, "Thefts, burglaries, assaults."

On cross examination, Johnson testified that, based on the facts at his disposal at the time of an arrest, he determines the appropriate offense with which to charge a defendant. Johnson agreed that, based on his training, experience, and the evidence, he determined that the appropriate charge against Appellant was possession of a controlled substance. He also agreed that the cocaine found on Appellant "could have also been for personal use." However, on redirect examination, the State asked, "Drug dealers, they don't stay in business unless they're selling dope; is that correct?" Johnson replied, "Most likely." On redirect examination of Shoemaker, the State asked if the amount of crack cocaine found on Appellant would be "consistent with somebody that was selling crack cocaine." Shoemaker answered, "Yes, sir, it would be." Again, Appellant objected, stating that this was "speculation." The trial court overruled Appellant's objection. Later, the State asked if the cocaine found on Appellant could "be cut up in several different pieces." Shoemaker answered "[y]es, sir." Then the State asked if it "could be cut up to sell to other people so he could get more drugs for his personal use and for sale." Shoemaker again answered "[y]es, sir." After the trial on punishment concluded, the jury assessed Appellant's punishment at life imprisonment.

**Standard of Review**

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See **Rodriguez v. State***, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); ***Montgomery v. State***, 810 S.W.2d 372, 390-91 (Tex. Crim. App.1990). The trial court is in the best position to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude evidence if it is "within the zone of reasonable disagreement." ***Rodriguez***, 203 S.W.3d at 841. A determination is beyond the zone of reasonable disagreement if by no reasonable perception of common experience could it be concluded that the proffered evidence had a tendency to make the existence of a fact of consequence more or less probable than it would be otherwise. ***Montgomery***, 810 S.W.2d at 391. If the trial court's ruling on the admission of evidence is correct under any theory of law, the trial court's decision should not be disturbed, even if the trial court

gives the wrong reason for its ruling. *See **Romero v. State***, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

**Applicable Law**

Article 37.07, section 3 of the Texas Code of Criminal Procedure provides the parameters for the admission of evidence to be considered in assessing the punishment of a defendant. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (Vernon Supp. 2010). Section 3 provides, in part, that

> [r]egardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of a extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1).

Admissibility of evidence at the punishment phase of a noncapital felony offense is a function of policy rather than relevancy. ***Rogers v. State***, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999) (quoting ***Miller-El v. State***, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990)). This is so because there are simply no distinct "fact[s] . . . of consequence" that proffered evidence can be said to make more or less likely to exist. ***Id.*** (quoting ***Miller-El***, 782 S.W.2d at 895-96). Rather, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." ***Id.*** (quoting ***Miller-El***, 782 S.W.2d at 895-96). Therefore, determining what is relevant should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case. ***Id.***

Texas Rule of Evidence 701 permits admission of "opinion testimony by lay witnesses." TEX. R. EVID. 701. Rule 701 provides that

> [i]f the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.

*Id*. "Perception" refers to a witness's interpretation of information acquired through his own senses or experiences at the time of the event, i.e., things the witness saw, heard, smelled, touched, felt, or tasted. ***Osbourn v. State***, 92 S.W.3d 531, 535 (Tex. Crim. App.

2002). Since rule 701 requires the testimony to be based on the witness's perception, it is necessary that the witness personally observed or experienced the events about which he is testifying. ***Id.*** (citing ***Fairow v. State***, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997)). Thus, the witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his own experiences or observations. ***Id.*** As a general rule, observations that do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of rule 701 are met. ***Id.*** at 537. This is true even when the witness has experience or training. ***Id.*** The personal experience and knowledge of a lay witness may establish that he is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge. ***Id.*** Thus, if the witness perceived events and formed an opinion that a reasonable person could draw from the facts, then the first part of rule 701 is met. ***Id.*** at 538. If the opinion is also helpful for the trier of fact to understand the witness's testimony or aids the determination of a fact in issue, then the opinion is also admissible under rule 701. ***Id.***

As a prerequisite to presenting a complaint for appeal, the record must show that a complaint was made to the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). The request, objection, or motion must state the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly. TEX. R. APP. P. 33.1(a)(2)(A). If the trial court refused to rule on the request, objection, or motion, the complaining party must have objected to the refusal. TEX. R. APP. P. 33.1(a)(2)(B). In other words, an objection must be timely, specific, pursued to an adverse ruling, and must be made each time inadmissible evidence is offered. ***Haley v. State***, 173 S.W.3d 510, 516-17 (Tex. Crim. App. 2005).

**Analysis**

Because Appellant asserts that Johnson's and Shoemaker's testimony was speculation, we must first determine if the testimony meets the requirements of rule 701 and, thus, is admissible as lay opinion. *See* TEX. R. EVID. 701. For the testimony to be admissible as lay opinion, the witness must have perceived the events and formed an opinion that a reasonable person could draw from the facts. *See **Osbourn***, 92 S.W.3d at

5

537-38. The opinion must also be helpful to the jury to understand their testimony or aid in the determination of a fact in issue. *See id.* at 538.

Johnson was a patrol officer for the Smith County Sheriff's Department and, at the time of trial, had been a police officer for eight years. For four years, he was a K-9 officer, performing narcotics enforcement. Shoemaker was a deputy for the Smith County Sheriff's Department for at least two years. Both officers participated in the events about which they testified, i.e., discovery of the crack cocaine found on Appellant. *See id.* Their opinion was based on what they perceived at the scene of the traffic stop. *See id.* Further, their experience in narcotics gave the officers the capability to testify regarding whether the amount of crack cocaine found on Appellant could have been for his personal use or for sale. This observation did not require significant expertise to interpret, was not based on scientific theory, and could be readily understood by the jury. *See Hollis v. State*, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no pet.). Therefore, Johnson's and Shoemaker's testimony regarding whether the amount of crack cocaine found on Appellant could have been for sale is admissible as lay opinion under rule 701. *See Osbourn*, 92 S.W.3d at 538.

Appellant argues further that the trial court erred in permitting the State to elicit Johnson's and Shoemaker's testimony because their testimony was "designed solely to cast Appellant, a possessor of drugs, as a dealer of drugs." *See Haley*, 173 S.W.3d at 515. This is, in substance, an argument that this testimony was not relevant to Appellant's sentencing. As described above, the trial court allowed the State to question the officers as to whether the "rock" of cocaine could have been split up for sale, whether someone buying that size of "rock" would probably sell it later, and whether the amount of crack cocaine would be consistent with someone selling crack cocaine. Appellant objected to these questions, citing "speculation," but the trial court overruled each objection. The State was also allowed to question the officers, without objection, as to whether the size of the "rock" might preclude it from being "used just for personal use," whether drugs were responsible for other crimes, and whether the cocaine found on Appellant could be cut up in several different pieces to sell to other people.

Preservation of error is a systemic requirement that must be reviewed by this court regardless of whether the issue is raised by the parties. *See Haley*, 173 S.W.3d at 515. In this case, Appellant's objection, "speculation," did not inform the trial court that Appellant questioned the relevance of the officers' testimony to Appellant's sentencing

6

or its helpfulness to the jury in determining the appropriate sentence for Appellant. *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1); *Rogers*, 991 S.W.2d at 265. Further, Appellant failed to object each time the State questioned the officers regarding whether the cocaine found on Appellant could have been for sale. *See Haley*, 173 S.W.3d at 516-57. Thus, Appellant has waived this issue on appeal. *See* TEX. R. APP. P. 33.1(a)(1). Accordingly, Appellant's first issue is overruled.

### CONSIDERATION OF PAROLE ELIGIBILITY

In his second issue, Appellant contends that the trial court erred in permitting the State to urge the jury to apply parole eligibility in determining Appellant's punishment. He concedes that he made no objection to the State's argument at trial as would be necessary to raise the issue on appeal. Appellant contends, however, that the error is so egregious that an instruction to disregard could not have cured the harm, citing *Romo v. State*, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982).

In the State's closing argument, the State informed the jury that

> [n]ow, you also heard in the charge that he would be eligible for parole after he did a quarter of his time. And whatever you guys give him, we'll honor that. It's your decision. You're representing Smith County. Whatever you decide to do, we'll honor that.
> However, you should know that at the most, whatever it is, he would be eligible for parole after 15 years at the very most.
> In other words – or a quarter of that time, whichever is less, whatever sentence you give him, a quarter of the time, or 15 years.
> So anything, really, after 60 years, because 15 is a quarter of that time, is really just sending a message, okay?
> Like if you gave him a life sentence, he's still eligible for parole in 15 years, in other words, but it sends a heck of a message.

Article 37.07, section 4 of the Texas Code of Criminal Procedure requires that the trial court charge the jury in writing as follows:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CRIM. PROC. CODE art. 37.07, § 4(a) (Vernon Supp. 2010). However, in *Cockrell v. State*, the court of criminal appeals held that a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal. *Cockrell v. State*,

7

933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Moreover, before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling. *Id.* In *Cockrell*, the court specifically overruled its holding in *Romo*, that a defendant may complain for the first time on appeal about an unobjected-to, erroneous jury argument that could not have been cured by an instruction to disregard. *Id.*

The record shows that Appellant did not object to the State's jury argument regarding his parole eligibility or the manner in which parole may be applied to him. *See* TEX. CRIM. PROC. CODE art. 37.07, § 4(a); *Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004). Even though the State's jury argument may have been improper and an instruction to disregard may not have cured the erroneous jury argument, Appellant may not complain for the first time on appeal about the State's jury argument. *See Cockrell*, 933 S.W.2d at 89. Because Appellant did not object at trial, he has forfeited his right to complain about the State's jury argument. Accordingly, Appellant's second issue is overruled.

## DISPOSITION

The *judgment* of the trial court is *affirmed*.

          **SAM GRIFFITH**
          Justice

Opinion delivered November 3, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)