IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 836-05, 837-05






RAUL RODRIGUEZ, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


WILSON COUNTY





 Meyers, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Womack, Keasler, Holcomb, and Cochran, JJ., join. Johnson, J., concurs. 
Hervey, J., did not participate.


O P I N I O N 



 Appellant pled guilty to escape and providing implements for escape and elected to
have a jury determine his sentence. He was sentenced to 10 years for escape and 5 years
for providing implements for escape and fined $10,000 for each of the convictions. 
Appellant appealed the sentence, claiming that evidence of the crimes of others was
improperly admitted. The court of appeals held that the trial court did not err in admitting
evidence regarding the post-escape crimes of the escapees. Rodriguez v. State, 163
S.W.3d 115 (Tex. App.-San Antonio 2005). We granted review to determine whether
evidence of crimes committed by others is relevant to a defendant's sentence, and if
relevant, whether such evidence is admissible under Rule of Evidence 403. (1) Finally, we
will address whether Appellant's due process rights were denied when he himself did not
commit the other crimes introduced at the sentencing phase of his trial. (2)

 We hold that the trial court did not err in admitting evidence of the crimes
committed by persons other than the defendant at the defendant's sentencing and affirm
the judgment of the court of appeals. FACTS

 Appellant's son, Michael Rodriguez, was convicted of murder and sentenced to
life in prison, which he was serving at the maximum security Connally Unit prison in
Kennedy. On one Sunday while Appellant was visiting him in prison, Michael told
Appellant that a guard was going to help him escape and give him a ride to the nearby
Wal-Mart. Michael asked Appellant if he would help him flee by getting him a car and
leaving it in the Wal-Mart parking lot on Tuesday morning. Appellant initially told his
son that he was unsure about helping him, but he said that if he could he would get a car
and leave it in the parking lot with a red bow in the dashboard and the key in the muffler. 
When Appellant left the prison that day, he went to the convenience store he owned and
went through the classified section of the newspaper looking for a car to buy. He found a
Suburban for sale for $3700 and cut out the advertisement. (3) The next day, Appellant gave
the newspaper clipping and $4000 to his friend, Patsy Gomez, and asked her to go buy the
car for him. Patsy purchased the car that evening. The following morning, she went to
Appellant's convenience store, and Appellant told her that his friend, Ernesto Perez, was
going to take the Suburban to the Wal-Mart in Kennedy and Patsy was to follow Ernesto
and bring him back to San Antonio in her car. Ernesto believed that they were taking the
Suburban to Kennedy to meet someone who wanted to purchase the car from Patsy and
was not informed of the plan to leave it there for Michael. Appellant gave Patsy a red
bow to place in the dashboard so that his son could identify the car and gave her a
magnetic key holder to use to hide the key in the muffler. He also gave her a bag
containing $300 and instructed her to place the cash and the title to the car under the floor
mat. 

 On December 13, 2000, Michael and six other inmates escaped from prison by
assaulting multiple guards, threatening them with shanks, tying them up, stealing their
clothes, and stealing 14 pistols and one shotgun from the prison armory before fleeing in
a State pickup truck. The inmates drove to the Wal-mart where they abandoned the State
pickup truck and found the Suburban furnished by Appellant. The escapees, who were
referred to as the Connally Seven, committed several crimes over the next month,
including multiple armed robberies and the murder of a police officer, before being
apprehended in Colorado. 

 Because his son was one of the escapees, officers questioned Appellant several
times during their investigation and asked him if he had any knowledge of the escape. 
Due to the media coverage, Appellant was aware of the crimes being committed by the
escapees, however he did not inform investigators of the Suburban he provided or aid law
enforcement in any way during the pursuit of the Connally Seven, despite the repeated
requests for information leading to their arrest.

 After the escapees were arrested, investigators learned of Appellant's role in the
escape. Appellant pled guilty to two charges, second-degree felony escape and third-degree felony of providing implements for escape, and elected to have a jury determine
his sentence. At the punishment phase of his trial, the State offered evidence relating to
the crimes committed by the escapees as well as the penitentiary packets of the escapees,
which described their criminal histories, including the crimes for which they were
incarcerated in the Connally Unit. The trial judge admitted the evidence over the
objections of the defense. Appellant testified that, other than what Michael said regarding
the guard driving him to the Wal-Mart, he did not know about the events that were
supposed to take place the day of the escape. He stated that prior to the news reports of
the escape, he never knew about the six other inmates who escaped with his son, and he
had never heard the names of any of the other escapees. Before summation, the defense
filed its Special Requested Jury Instruction Number One, which sought to have the jury
disregard the evidence of the crimes committed by the escapees, contending that it was
erroneously admitted. The trial court refused to give the instruction offered by the
defense and, instead, gave its own instruction that the jury could not consider the other
crimes evidence unless it found beyond a reasonable doubt that Raul Rodriguez "intended
that such bad acts or offenses would be committed by the other persons, or that he should
reasonably have anticipated that such bad acts or offenses would be committed by the
other persons."

 Appellant asked the jury to consider his application for probation, but instead the
jury sentenced him to 10 years for escape and 5 years for providing implements for
escape, as well as a fine of $10,000 for each of the convictions.

COURT OF APPEALS

 Appellant appealed his sentence, claiming that the evidence admitted at his
sentencing hearing was irrelevant, was substantially more prejudicial than probative, and
violated the Due Process Clause of the Fourteenth Amendment to the United States
Constitution. The court of appeals held that the trial court could reasonably determine
that the evidence showed Appellant's character and moral blameworthiness and therefore,
was helpful to the jury in deciding the appropriate sentence. Rodriguez, 163 S.W.3d at
119. Additionally, the court determined that the proper review is whether the trial court
abused its discretion and held that the trial court's decision to admit the evidence over
Appellant's Rule 403 objections was not outside the zone of reasonable agreement. 
Finally, the court held that the admission of the evidence did not deny Appellant a fair
trial. Id.

ANALYSIS

 Because trial courts are in the best position to decide questions of admissibility, we
review a trial court's decision regarding the admissibility of evidence under an abuse of
discretion standard. See Montgomery, 810 S.W.2d 372, 391 (trial court "has the best
vantage from which to decide" admissibility questions). This standard requires an
appellate court to uphold a trial court's admissibility decision when that decision is within
the zone of reasonable disagreement. Id. An appellate court would misapply the
appellate abuse of discretion standard of review to reverse a trial court's admissibility
decision solely because the appellate court disagreed with it. Id.; See also Robbins v.
State, 88 S.W.3d 256, 259-60 (Tex. Crim. App. 2002). 

Relevance

 Appellant first contends that evidence of crimes committed by other persons is not
relevant to his sentence when Appellant himself did not commit the other crimes, was not
criminally responsible for their commission, did not intend their commission, and could
not have reasonably anticipated their commission.

 Article 37.07, section 3(a)(1) (4) of the Texas Code of Criminal Procedure states that
during the sentencing phase, the State may offer evidence "as to any matter the court
deems relevant to sentencing." The term "relevant" is not defined, however the statute
also provides that evidence relevant to sentencing includes, but is not limited to: (1) the
prior criminal record of the defendant; (2) the defendant's general reputation; (3) the
defendant's general character; (4) an opinion regarding the defendant's character; (5) the
circumstances of the offense being tried; and (6) notwithstanding Texas Rules of
Evidence 404 and 405, any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the defendant or for
which the defendant could be held criminally responsible, regardless of whether the
defendant has previously been charged with or finally convicted of the crime or act. See
Tex. Crim. Proc. Code Ann. Art. 37.07, §3(a)(1). 

 In Murphy v. State, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988), we noted that the
admissibility of evidence at the punishment phase of a non-capital felony offense is a
function of policy rather than relevance. We discussed this in Miller-El v. State, and
stated that:

 This is so because by and large there are no discreet factual issues at the
punishment stage. There are simply no distinct "facts . . . of consequence"
that proffered evidence can be said to make more or less likely to exist. 
Rather, "deciding what punishment to assess is a normative process, not
intrinsically factbound." What evidence should be admitted to inform that
normative decision is not a question of logical relevance, but of policy. 
Apart from Article 37.07, § 3(a), however, the Legislature has not set a
coherent policy to guide courts in discerning what evidence is appropriate to
the punishment deliberation. Moving to fill the policy void, this Court has
declared that, subject to limitations imposed by Article 37.07, § 3(a),
evidence of "the circumstances of the offense itself or . . . the defendant
himself" will be admissible at the punishment phase. 

Miller-El v. State, 782 S.W.2d 892, 894-95 (Texas Crim. App. 1990) (footnotes and
citations omitted). Determining what is relevant then should be a question of what is
helpful to the jury in determining the appropriate sentence for a particular defendant in a
particular case. See Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App 1999). In a
non-capital felony punishment hearing, the jury has discretion to assess whatever
punishment it sees fit, within the prescribed range. 

 It is also noteworthy that, for the offense of escape, Appellant was charged as a
party. Texas Penal Code section 7.02(a)(2) allowed Appellant to be charged as a party to
the offense of escape although he was not present during the actual commission of the
crime. As a party to an offense, a person is criminally responsible for the conduct of the
other parties to the offense. Thus, because Appellant aided in the commission of the
escape, he could be held criminally responsible for the offense. 

 Evidence that the escapees were on a month-long crime spree while evading the
police is relevant to show that Appellant was aware that more crimes were being
committed as a result of the escape he had aided, but he still failed to go to the police to
assist in the recapture. And, due to the nature of the offense of escape, the penitentiary
packets of the escapees are relevant to help the jury determine whether the crimes
committed between the escape and recapture were foreseeable. While Appellant was not
present at the crimes introduced at his sentencing phase, in determining Appellant's moral
blameworthiness, a jury may reasonably consider the offenses that occurred as a result of
Appellant's conduct of aiding in the escape. The evidence of extraneous crimes
committed by others was relevant to Appellant's sentencing.

Rule 403

 Next, Appellant contends that Rule 403 of Texas Rules of Evidence does not
permit a large amount of damaging misconduct evidence at his sentencing trial when the
defendant did not commit the misconduct, was not criminally responsible for it, and could
not reasonably have anticipated that others would do so. 

 As stated above, the trial court's decision on questions of relevance in sentencing
is broad. And, the evidence of the crimes of the escapees was relevant to show the
circumstances of the offense for which Appellant was charged. However, under Texas
Rule of Evidence 403, even relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of issues,
misleading the jury, considerations of undue delay, or needless presentation of cumulative
evidence. We have held that a Rule 403 analysis may include considerations of: (1) the
probative value of the evidence; (2) the potential of the evidence to impress the jury in
some irrational, but nevertheless indelible way; (3) the time the proponent needs to
develop the evidence; and (4) the proponent's need for the evidence. See Reese v. State,
33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000). For this Court to overrule the trial
court's Rule 403 analysis, we would have to say that the evidence lay outside the "zone of
reasonable disagreement." Robbins, 88 S.W.3d at 260. 

 The evidence did not take an inordinate amount of time to present, and there is
little danger that the evidence confused the issues or misled the jury. The evidence of the
crimes committed by the escapees who were aided by Appellant had significant value in
giving the jury the complete information regarding the offense for which Appellant was
charged. Rather than confusing the issues, the evidence served to further the jury's
understanding of the issues by explaining the circumstances surrounding the escape. The
penitentiary packets of the escapees explain why they were in prison and lay the
foundation for the discussion of the offense of escape. The past crimes of the escapees
are also probative to help the jury determine the foreseeability of the crimes the escapees
committed between the escape and the recapture. It would be extremely confusing to the
jury if the circumstances surrounding the offense of escape were not explained to them. 

 Appellant is correct that, although he was charged as a party to the escape, he
could not be charged as a party to the aggravated robberies or the capital murder
committed by the escapees. However, the evidence regarding the post-escape crimes of
the escapees was highly probative of Appellant's moral blameworthiness for not assisting
the police in the recapture of the escapees. Testimony indicated that it would have been
easier to find the escapees if they had been using a stolen car because the police would
have had a description and license number of the stolen vehicle to search for. Appellant
watched the television coverage of the crimes being committed by the Connally Seven, 
yet rather than informing the investigators of the Suburban he provided the escapees, he
continued to lie to the police. 

 We disagree with Appellant that he could not have reasonably anticipated the
commission of the crimes committed by the escapees. After Appellant pled guilty as a
party to the escape, the jury could reasonably conclude that in facilitating the offense, he
should have anticipated the events and circumstances surrounding the escape, including
that additional crimes would be committed by the escapees in an attempt to evade police
and prevent recapture. We also disagree that the evidence was unfairly prejudicial to
Appellant. The evidence regarding the crimes committed by the escapees consisted of
their penitentiary packets and testimony from officers who were searching for them after
the escape. This evidence was not shocking or gruesome and is not the type of evidence
that would impress the jury in some irrational way. The jury was informed that Appellant
could not be charged with the post-escape crimes of the escapees, and the sentence
assessed by the jury was within the prescribed range for the offenses with which
Appellant was charged. 

 The court of appeals correctly determined that the trial court did not abuse its
discretion in admitting the evidence of the crimes committed by the escapees for the jury
to consider during the punishment phase of Appellant's trial.Due Process

 Finally, Appellant contends that his due process rights under the 14th Amendment
to the U.S. Constitution were denied by admitting "extensive and extraordinarily
prejudicial evidence" of crimes committed by other persons.

 Appellant's due process rights under the 14th Amendment of the U.S. Constitution
were not violated because the challenged evidence did not deprive him of a fair trial as to
his guilt. Instead, a jury determined the level of punishment for the crimes to which
Appellant pled guilty. At sentencing, the trial court expressly submitted an instruction
that the jury could not consider the other crimes evidence unless it found beyond a
reasonable doubt that Appellant "intended that such bad acts or offenses would be
committed by the other persons, or that he should reasonably have anticipated that such
bad acts or offenses would be committed by the other persons." This instruction further
served to protect Appellant's due process rights by ensuring that the crimes of others 
were used only in considering Appellant's part in the offenses charged against him and
that he was not sentenced based on the crimes of others. 

 Appellant is mistaken in his belief that he is being punished for crimes committed
by others. Rather, a jury considered evidence of the circumstances surrounding the
charged offenses and sentenced Appellant within the penalty range allowed by statute for
the crimes for which he pled guilty.

CONCLUSION


 Texas Code of Criminal Procedure allows evidence regarding the circumstances of
the offense being tried to be admitted at a defendant's sentencing hearing. In the case
before us, admitting evidence of crimes committed by others was well within the trial
court's discretion and it was not error for the jury to use the evidence to determine
Appellant's moral blameworthiness for punishment purposes. Furthermore, the trial court
did not err in conducting its Rule 403 analysis and concluding that the probative value of
the evidence in explaining the circumstances of the charged offense was not substantially
outweighed by the danger of unfair prejudice. Appellant was afforded a fair trial and his
due process rights were not violated when evidence regarding crimes committed by the
escapees was admitted at his punishment hearing. The judgment of the court of appeals is
affirmed. 

 Meyers, J.


Delivered: October 4, 2006

Publish
1. Unless otherwise noted, all future references to Rules refer to Texas Rules of Evidence.
2. Appellant's grounds for review are:

1) Is evidence of crimes committed by other persons relevant to a defendant's sentence,
when the defendant himself did not commit the other crimes, was not criminally
responsible for their commission, did not intend their commission, and could not
reasonably have anticipated their commission? 

 

2) Does Rule 403 permit the admission of a large amount of very damaging misconduct
evidence at defendant's sentencing trial when the defendant himself did not commit the
misconduct, was not criminally responsible for it, and could not reasonably have
anticipated that others would do so?

 

3) Is due process denied where the trial court admits extensive and extraordinarily
prejudicial evidence of crimes committed by persons other than the defendant that was
not fairly attributable to the defendant?
3. Appellant stated that he chose the Suburban because his son had mailed to him
advertisements for a similar car several months earlier with a letter asking him to provide a get-away vehicle.
4. Unless otherwise noted, all future references to Articles refer to the Texas Code of
Criminal Procedure.