

# NUMBER 13-09-00283-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**GEORGE BRISENO AMADOR,**                                             **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

## On appeal from the 370th District Court
## of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez, and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, George Briseno Amador, was indicted on one count of aggravated

assault with a deadly weapon, a first-degree felony. *See* TEX. PENAL CODE ANN.

§§ 22.01, 22.02 (Vernon Supp. 2010). Following a jury trial, Amador was found guilty

and sentenced to eight years' imprisonment in the Institutional Division of the Texas

Department of Criminal Justice and ordered to pay fines and restitution in the amount of $85,798.82. By three issues, Amador contends that: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in admitting prejudicial and inflammatory evidence; and (3) the trial court erred in allowing improper jury argument by the State. We affirm.

## I. BACKGROUND

In the early morning hours of June 21, 2008, Amador shot Miguel Angel Zamora in the chest. The testimony indicated that Amador had a "bootleg" business wherein he sold alcohol out of his home after legal store hours. Andy Garza, a friend of Amador's, brought Zamora to Amador's apartment so that they could "hang out" and drink alcohol late into the night. Amador, Zamora, and Garza all drank together for several hours. Zamora and Garza admitted to using cocaine, but the testimony conflicted as to whether Amador was also using cocaine. According to Amador's testimony, Zamora and Garza left to visit a neighbor's apartment at some point during the night but later came back. Amador further testified Zamora and Garza were acting violently—wrestling with each other and threatening one of Amador's friends who briefly stopped by during the night. Amador testified that he told Zamora and Garza to leave because of their behavior and because he believed that they were stealing beer and taking it to the neighbor's apartment. Amador testified that Zamora and Garza became confrontational and refused to leave.

Garza knew that Amador had guns in his apartment, and Amador testified that both Garza and Zamora had access to his guns because they passed through his bedroom to use the bathroom several times throughout the night. Amador testified that he believed that Garza or Zamora may have taken one of his guns. After Garza and Zamora refused to leave, Amador went to his bedroom and retrieved a handgun that he kept under his pillow.

Each of the three witnesses present at the scene had a different account of exactly where the parties were when the shooting occurred. Garza's testimony indicated that when Amador returned from his bedroom with a gun, Zamora was already outside the apartment, and that Amador brandished the gun in front of Zamora and Garza, again telling them to leave. Zamora's testimony indicated that he walked backwards out of the apartment with his hands up because Amador already had a gun, and that the next thing he remembered was waking up in the hospital two weeks later. Amador testified that Zamora was still in the apartment when he returned with the gun and that Zamora "lunged" at him. Amador testified that he believed Zamora had a gun somewhere on his person.[1] Amador also testified that Amador suffered from post-traumatic stress disorder as a result of his military service in Vietnam—making him particularly susceptible to noise and commotion.

Zamora testified that Amador fired two shots and that he was hit in his "side" and in his "left nipple area." He further testified that the shots caused an exit wound in his lower back. Amador testified that he was just trying to give Zamora "a little nick." Garza testified that after the shots were fired, he ran out of the apartment, eventually

---

[1] Amador concedes that, in fact, neither Zamora nor Garza had a weapon at the time of the shooting.

3

making his way to his wife's house where he called the police.

During the trial, the State admitted a video into evidence over Amador's objection. The video contained images of the inside of Amador's apartment showing flags that covered his walls—one of which was a Nazi flag—and pornography adorning Amador's refrigerator. Additionally, Amador testified to the presence of these items in his apartment, and photos showing the same materials were admitted at trial over Amador's objection.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Amador contends that the evidence at his trial was factually insufficient to sustain his conviction. The Texas Court of Criminal Appeals has held that our only sufficiency review should be under "a rigorous and proper application" of the *Jackson* standard of review, and therefore, we construe Amador's factual sufficiency arguments as legal sufficiency arguments in this appeal. *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the

4

testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 238-40 (Tex. Crim. App. 1997); *see Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Amador: (1) intentionally, knowingly, or recklessly; (2) caused bodily injury to Zamora; and (3) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02. Amador concedes on appeal to all of the elements of this offense. He contends, however, that he produced sufficient evidence that he was acting in self defense, triggering the State's burden to prove otherwise, and that the evidence was insufficient to rebut his self-defense claim.

The jury in this case, however, heard evidence that (1) Amador fired without provocation; (2) Zamora had, or at least was in the process of, leaving Amador's apartment; (3) Zamora had his hands in the air; and (4) neither Zamora nor Garcia had a weapon. We recognize that this evidence was controverted during the trial, but it is within the province of the jury to determine the credibility of the witnesses and to determine what weight is to be given to all of the testimony. *See Wesbrook*, 29 S.W.3d at 111. Viewing this evidence in the light most favorable to the prosecution, we hold that there was sufficient evidence for the jury to find beyond a reasonable doubt that

5

Amador was not acting in self-defense. *See Jackson*, 443 U.S. at 319. Accordingly, Amador's first issue is overruled.

## B.     Prejudicial Evidence

By his second issue, Amador contends that the trial court erred in admitting the videotape showing Nazi flags and pornography in his apartment because the evidence was more prejudicial than probative and inflamed the jury.

Texas Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." TEX. R. EVID. 403. We review a trial court's determination of the admissibility of evidence under rule 403 for an abuse of discretion and will only reverse such a determination if the decision to admit or exclude the evidence was arbitrary and falls outside the "zone of reasonable disagreement." *Rodriguez v. State*, 203 S.W.3d 837, 843 (Tex. Crim. App. 2006); *see Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009) ("The admissibility of photographs over an objection is within the sound discretion of the trial judge."). The Texas Court of Criminal Appeals has held that,

> a Rule 403 analysis may include considerations of: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence.

*Rodriguez*, 203 S.W.3d at 843 (citing *Reese v. State*, 33 S.W.3d 238, 240-41 (Tex. Crim. App. 2000)).

6

The State contends that the evidence was necessary to prove its theory of the case, and therefore, was so probative that the inflammatory nature of the evidence was far outweighed by the State's need to admit the evidence. According to the State, the evidence was necessary to prove that Zamora was outside Amador's apartment when he was shot and to develop its theory of Amador's motive by showing that he was angry because he believed Zamora and Garza were stealing beer from him. Specifically, the video showed the layout of the apartment and showed a sign on the refrigerator door indicating that no one was allowed to open his refrigerator. The exact location of each of the parties at the time of the shooting was critical in the resolution of Amador's self-defense claim. Therefore, we agree that it was in the zone of reasonable disagreement to find that this evidence was more probative than prejudicial.

Additionally, we note that in coming to this conclusion, we consider the fact that the Nazi flag of which Amador complains was accompanied on his walls by several other flags—including flags of Texas, Canada and the United States Marine Corps—thereby arguably lessening its inflammatory effect. Moreover, we do not consider the presence of pornography or Nazi paraphernalia to be so inflammatory or prejudicial as to outweigh the obvious need of the State to present the video evidence in this case. Accordingly, we hold that the trial court did not abuse its discretion in admitting the videotape evidence, and we overrule Amador's second issue.[2]

---

[2] Because we conclude that the trial court did not abuse its discretion in this case, we need not address the State's additional contention that evidence of the Nazi flag and pornography were already admitted by other means—including testimony of the witnesses and photographs of the scene. *See* TEX. R. APP. PRO. 47.4.

## C. Improper Jury Argument

By his third issue, Amador contends that the trial court erred when it allowed the State to argue to the jury that Amador and Garza were involved in a romantic relationship and that the shooting was somehow motivated by "romantic jealousy." Amador contends that this was an argument outside of the evidence. However, Amador does not provide record citations to any specific argument of the State. In our own review of the record, we find the following argument by the State to be the closest to such a statement:

> He wants you to believe that he is this innocent man, that he is just minding his own business, in his apartment, hanging out with 29-year-old men, selling them—not even selling them, giving them alcohol if they stayed there.

> And of course his favorite young man was [Garza]. He had feelings for [Garza]. We begin to develop a relationship. It was [Garza]. He was upset because [Zamora] was there. He didn't want [Zamora] there. He wanted [Garza] to himself.

Regardless, Amador did not object to this allegedly improper jury argument as it was being made. Therefore, he has forfeited his right to complain about the jury argument on appeal. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) ("Because appellant failed to object to the jury argument, he has forfeited his right to raise the issue on appeal."); *Mathis v. State*, 67 S.W.3d 918, 927 (Tex. Crim. App. 2002) (describing appellant's argument that an objection would be pointless because it would have been incurable, and noting that "even if the error was such that it could not be cured by an instruction, appellant would be required to object and request a mistrial"); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) ("Before a defendant will be permitted to complain on appeal about an erroneous jury argument, . . . he will have to

8

show he objected and pursued his objection to an adverse ruling."). Accordingly, Amador's third issue is overruled.

### III. CONCLUSION

Having overruled all of Amador's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P.47.2(B)

Delivered and filed the
5th day of May, 2011.