**Affirmed and Memorandum Opinion filed December 29, 2011.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-10-00440-CR**
**NO. 14-10-00441-CR**

---

**SIR JOSHTON STA VOHN MARTIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1212862 & 1212863**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Sir Joshton Sta Vohn Martin, appeals his convictions for aggravated robbery with a deadly weapon and burglary of a habitation, contending (1) the evidence is legally insufficient to support both convictions and the deadly-weapon finding relative to the aggravated-robbery conviction, and (2) the trial court erred by admitting certain evidence during the punishment phase for both convictions. We affirm.

## I. BACKGROUND

A consolidated trial was conducted on both charges. According to the State's evidence, the home of Mario and Marilyn Porras was burglarized on the afternoon of April 16, 2009. Their daughter, Jessa, who lived in the home, had previously dated appellant, and he visited the home during the relationship. At the time of the burglary, Jessa and appellant no longer maintained any relationship except that they have a child together. When Jessa returned home at about 4:00 p.m., she discovered her parents' bedroom was "cluttered," which she considered unusual. Further, a photograph admitted at trial showed pry marks on a window. The stolen property included some jewelry and a .45 caliber pistol, which belonged to Mario and were kept in his bedroom, and a laptop computer, an "X space," a PlayStation, and a camera. Neither Mario nor Jessa gave appellant permission to enter their home that day, and Marilyn was working overseas at the time. Appellant did not have a key to the home.

That evening, appellant drove his girlfriend, Shanteria Galvan, and his friends, Johnny Roberts and Eddie Johnson, in appellant's car to a gas station, which was located near the Porras home. Appellant made a purchase in the store on the premises and returned to the car. Galvan and Johnson then both entered the store. The complainant, Isaac Segura, also entered the store while Galvan and Johnson were inside.

Johnson noticed Segura when he entered and watched him walk down a merchandise aisle. Johnson then immediately made a statement to Galvan as she exited the store. According to Houston Police Sergeant Mark Reynolds, Galvan reported that Johnson said something to the effect of "tell Boochy I need . . . something" or "tell Boochy . . . to get . . . something"; "Boochy" is appellant's nickname. However, at trial, Galvan equivocated regarding the statement and testified she did not exactly understand Johnson's words or pay much attention, but he said something to the effect of "get Duty."

In any event, Segura and all persons in appellant's group returned to their respective vehicles. Galvan sat in the front passenger seat of appellant's car, and Johnson and Roberts were passengers in the back seat. Johnson and Roberts then exited the car.

2

Johnson ran toward Segura's vehicle while Roberts followed. Johnson immediately shot Segura in the jaw, and the men took Segura's watch and necklace. In the meantime, appellant drove around to the back of the station. Johnson and Roberts ran toward appellant's car. After they entered the car, appellant sped away. The store's surveillance videotape, which the jury viewed, showed the actions of the relevant persons inside the store, Johnson running from appellant's car while holding a gun with Roberts following, the shooting, appellant driving to the back of the station, and Johnson and Roberts running toward the back of the station.

While officers were investigating the scene, Mario Porras's nephew approached and asked if a .45 caliber gun was used in the offense, stating that his relative's home was burglarized earlier that day, a .45 caliber gun was stolen, and the family suspected appellant committed the burglary. Officers eventually determined a .45 caliber semi-automatic gun was used in the shooting. However, they were unable to locate a gun that matched the bullet fragments removed from Segura's body or fragments and casings found at the scene, much less trace a gun used in the shooting to the one stolen from the Porras home.

Sergeant Reynolds interviewed Mario and his nephew to determine why they suspected appellant of the burglary, although, at trial, Sergeant Reynolds did not relay the contents of their statements. Sergeant Reynolds also viewed the surveillance tape, obtained still photographs from the tape, and spoke with various individuals in an attempt to ascertain the identity of the persons depicted therein. After discovering appellant was the driver, Sergeant Reynolds contacted him. On the night of April 17, 2009, appellant voluntarily appeared at the police station for an interview, but he did not drive his own car. Sergeant Reynolds did not testify regarding appellant's statement at the station. Sergeant Reynolds drove appellant home after the interview.

The next day, officers located appellant's car, in which they found a pawn ticket containing his name and some of Mario's rings which were stolen during the burglary. Sergeant Reynolds then discovered that, on the afternoon of April 17, 2009, appellant

3

pawned another ring and a necklace, which were stolen from Mario during the burglary. Officers also found Segura's blood on the floorboard of a rear passenger seat of appellant's car and a particle of gunshot residue on the driver's seat. Stephen Houck, an employee of the Harris County Institute of Forensic Science who analyzed the particle, characterized the results as "inconclusive," meaning he could not opine whether the residue resulted from a weapon fired in the area of the residue or "incidental transfer." Appellant was arrested for aggravated robbery and burglary of a habitation a week after these offenses when he went to the police station to retrieve his car.

Segura was not expected to live but did survive. Sergeant Reynolds showed photograph arrays to Segura when he regained consciousness about forty-eight hours after the incident. Segura immediately identified Johnson as the shooter but could not identify Roberts. Sergeant Reynolds did not show Segura an array containing appellant's photograph because Sergeant Reynolds already knew that Segura had not personally encountered appellant. At trial, Segura was unable to identify appellant as a perpetrator.

In general, appellant does not dispute the above-cited facts regarding the offenses. Rather, at trial, appellant maintained that he did not commit the burglary or participate in the robbery. Three witnesses provided direct testimony pertinent to whether appellant was involved in committing one or both of these offenses: (1) Galvan, whom the State presented during its case-in-chief; (2) appellant, who testified on his own behalf; and (3) Roberts, whom the State then presented as a rebuttal witness.

Galvan did not provide any relevant testimony regarding the burglary. With respect to the robbery, Galvan did not expressly deny that appellant was a participant but suggested he was not involved other than being forced to drive Johnson and Roberts from the scene. In particular, Galvan testified that, when all members of the group had returned to the car, Johnson was "like, on a mission" and "talking crazy" that he planned to "get someone or something." Roberts then exited the car and followed Johnson, who was already out of the car. Galvan told appellant to leave because she did not want to be involved. Appellant appeared "scared" and "nervous" and began driving out of the

4

station toward his mother's house, but Galvan insisted they go to her home, so appellant abruptly turned around. He then stopped the car, Roberts and Johnson entered, and Johnson ordered appellant to drive. Appellant left Galvan near her home.

At trial, appellant denied committing the burglary. Rather, appellant testified that he spent three or four hours during the afternoon of April 16, 2009 at his grandmother's house.

Appellant also denied participating in the robbery and testified as follows regarding the incident. After the group returned to the car, appellant heard a disturbing discussion between Roberts and Johnson, although appellant did not relay the contents at trial. Appellant told them he "wasn't down with it" and would leave if they exited the car. After Roberts and Johnson exited the car, appellant began driving out of the station toward his mother's house, hoping such action would thwart their plans because he was their only ride home. Galvan insisted appellant take her home, so he turned around and began traveling another direction which necessitated driving by the side of the station. Roberts and Johnson ran toward the car with Johnson holding a gun. Appellant stopped and allowed Roberts and Johnson to enter the car because appellant feared he would be shot. Appellant said he would drive to any location they chose if he were allowed to first take Galvan home. Appellant left Galvan near her home. He then drove a few more minutes with directions dictated by Johnson, who finally told him to stop, and Johnson and Roberts exited the car. The next day, appellant discovered jewelry that had been left by Johnson and Roberts in appellant's car, but he did not know it belonged to Mario Porras. At first, appellant suggested that he felt entitled to pawn some of the jewelry because Roberts and Johnson had involved him in these incidents. On cross-examination, appellant admitted that obtaining money was the reason he pawned some of the jewelry.

At trial, Roberts denied participating in the burglary although he had previously visited the Porras home, and the State did not allege Roberts committed the burglary. Rather, Roberts testified that, on the afternoon of the burglary, appellant appeared at Roberts's house before appellant went to his grandmother's house. Appellant showed Roberts some rings (which Mario identified at trial as his stolen property), a .45 caliber

5

pistol, and a laptop computer, which Roberts had previously seen at the Porras home. Appellant did not reveal the source of the property but said "everything wasn't for [Roberts] to know." Roberts assumed appellant had burglarized a random home. However, later that day, Jessa Porras phoned Roberts, stating her home had been burglarized and she suspected appellant. Roberts "covered" for appellant, claiming he was at Roberts's home that day. When Roberts asked appellant about Porras's accusations, appellant replied, "just keep it on the low."

At the time of trial, Roberts had already been sentenced for commission of the robbery and provided the following testimony regarding that offense. After all four members of the group returned to appellant's car, Johnson stated that a man inside the store had a "clean chain," which Johnson liked. Johnson said to appellant, "let me see the thing," referring to the pistol that appellant earlier indicated he had taken from the Porras home. Appellant "reached down in the seat" and handed Johnson a pistol. Johnson then ran toward Segura's vehicle while Roberts followed. Johnson shot Segura and took his "belongings." Meanwhile, appellant drove to the back of the station and "waited on the cue." Johnson and Roberts ran to the car and "jump[ed] in." Appellant drove away but demanded return of the gun, and Johnson complied. Johnson also placed a necklace which was "dripping" in blood on a rear floorboard. At some point, appellant ordered Johnson to clean the blood on the floorboard. They took Galvan home and then went to Roberts's house. Roberts disputed appellant's suggestion that he was attempting to drive away from the station and Johnson waved the gun to force appellant to stop.

In the jury charge for the aggravated-robbery allegation, the trial court submitted an accomplice-witness instruction relative to Roberts's testimony and an instruction regarding the law of parties. A jury found appellant guilty of both offenses and assessed punishment of fifteen years' confinement for the aggravated-robbery conviction and four years' confinement for the burglary conviction.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant has filed a separate appellate brief to challenge each conviction. In each brief, he presents legal-sufficiency challenges relative to the particular conviction. When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id*. Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We will consider separately appellant's legal-sufficiency challenge relative to each offense.

### A. Aggravated Robbery

A person commits aggravated robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death" and "uses or exhibits a deadly weapon." Tex. Penal Code Ann. §§ 29.02(a)(2); 29.03(a)(2) (West 2011). In the first and second issues of his brief challenging the aggravated-robbery conviction, appellant contends the evidence is legally insufficient to support (1) the jury's finding that he committed the offense and (2) the jury's finding that he used or exhibited a deadly weapon during commission of the offense.

7

### 1. Conviction as a Party to the Offense

Appellant does not dispute that Roberts and Johnson committed aggravated robbery of Segura; instead, appellant essentially challenges sufficiency of the evidence to support the finding that he was a party. In particular, appellant contends (1) Roberts's accomplice-witness testimony was not sufficiently corroborated by other evidence tending to connect appellant with commission of the offense, (2) the evidence established at most appellant's "mere presence" at the scene of the offense, and (3) there was no evidence appellant acted as a party to the offense.

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). When evaluating sufficiency of corroboration evidence under the accomplice-witness rule, we eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to determine if there is any evidence that "tends to connect" the defendant with commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). The corroborating evidence need not, by itself, prove the defendant's guilt beyond a reasonable doubt. *Id.* Rather, the evidence must simply link the defendant "in some way" to commission of the crime and show that rational jurors could conclude that this evidence sufficiently "tended to connect" the defendant to the offense. *Id.*

Under the law of parties, "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See* Tex. Penal Code Ann. § 7.02(a)(2) (West 2011). In reviewing the evidence regarding an appellant's culpability under the law of parties, we may consider events occurring before, during, and after commission of the offense, and may rely on the defendant's actions that show an understanding and common design to perform the prohibited act. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on rehearing). Party status may be proved by circumstantial

8

evidence. *Id.* Mere presence at the scene of the offense is not sufficient alone to establish guilt as a party; however, presence at the scene is a circumstance tending to prove guilt which, when combined with other facts, may suffice to show that the defendant was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on rehearing).

Our analysis of appellant's three sub-issues is interrelated. Specifically, we conclude Roberts's accomplice-witness testimony supported the jury's implicit finding that appellant intentionally aided Roberts and Johnson in commission of the aggravated robbery and was not merely present at the scene. According to Roberts, Johnson indicated that he wanted Segura's jewelry and requested the gun from appellant; appellant handed Johnson the gun and willingly drove the getaway vehicle. *See Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985) (recognizing that defendant's actions after commission of crime, including driving getaway vehicle, although alone insufficient to prove guilt at as a party, may be sufficient to sustain conviction when combined with incriminating evidence of actions *before* commission of offense); *Valdez*, 623 S.W.2d at 321 (stating that, although flight from scene of offense alone will not support "guilty" verdict, flight is circumstance from which inference of guilt may be drawn). Additionally, the jury could have rationally inferred appellant's consciousness of guilt based on Roberts's testimony that appellant ordered Johnson to clean the blood on the floorboard and demanded return of the gun. *See Wells v. State*, 578 S.W.2d 118, 119 (Tex. Crim. App. 1979) (recognizing attempt to conceal incriminating evidence is indicative of guilt). The jury could have also reasonably concluded appellant concealed or disposed of the gun, considering Roberts's testimony that Johnson returned the gun to appellant in conjunction with evidence the police never located it.

We further conclude a rational jury could have determined that Roberts's testimony was corroborated by non-accomplice evidence "tending to connect" appellant

to commission of the robbery as a party.[1]  Specifically, the surveillance tape, Sergeant Reynolds's testimony, Galvan's testimony, appellant's own testimony, and physical evidence including Segura's blood and gunshot residue found in appellant's car, demonstrated the following: once Johnson noticed Segura inside the store, Johnson instructed Galvan to tell appellant (who had already returned to the car) that Johnson "need[ed] . . . something" or "to get . . . something," although Galvan apparently did not comply; appellant was present in the car when Roberts and Johnson subsequently exited to commit the robbery; and appellant then drove to the back of the station where he retrieved Roberts and Johnson.  *See Malone*, 253 S.W.3d at 257 (stating that proof defendant was at or near scene of crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect him to crime, thus furnishing sufficient corroboration to support conviction).

The jury was free to disbelieve the portions of both appellant's and Galvan's accounts suggesting that appellant was attempting to leave the scene for his mother's house but, after turning around to take Galvan home, felt forced to stop because Johnson wielded a gun.  *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (expressing that jury may choose to believe or disbelieve any portion of a witness's testimony).  In fact, the surveillance video shows Johnson and Roberts immediately running directly to the back of the station after the shooting, as opposed to looking around for appellant's car.  Thus, the jury could have rationally inferred that Johnson and Roberts knew where appellant would be waiting as part of the plan and did not simply force appellant to stop as he drove by the station.

Moreover, some of appellant's actions and statements after the offense indicated consciousness of guilt and thus corroborated Roberts's testimony.  In particular, appellant

---

[1] We do not necessarily agree with appellant's suggestion that his conviction was "had upon the testimony of" Roberts.  *See* Tex. Code Crim. Proc. Ann. art. 38.14.  Arguably, the non-accomplice evidence was alone legally sufficient to support the conviction.  In fact, the State presented Roberts as a rebuttal witnesses after appellant testified.  Nonetheless, we need not decide whether conviction was "had upon the testimony of" Roberts because the non-accomplice evidence at least "tends to connect" appellant to commission of the offense, and Roberts's testimony and the non-accomplice evidence together are legally sufficient to support the conviction.

claimed he voluntarily appeared for his interview with Sergeant Reynolds to aid in the investigation. Nevertheless, the jury could have rationally inferred that appellant attempted to hide his participation in the offense, considering he did not drive his own car to the police station admittedly because it had transported persons involved in the offense and he was reluctant to inform Sergeant Reynolds regarding the identities and whereabouts of Johnson and Roberts. Further, at trial, appellant acknowledged that, while incarcerated following his arrest for the offense, he told his grandmother by telephone, "They don't have the gun; so, they don't have a case on me." The jury could have reasonably considered this statement as an admission that appellant had some role in providing the gun for the robbery and later concealed or disposed of it.

In sum, the evidence is legally sufficient to support the jury's finding that appellant was a party to the aggravated robbery. We overrule his first issue relative to the aggravated-robbery conviction.

### 2. Deadly-Weapon Finding

Appellant also contends that the evidence is legally insufficient to support the jury's finding that he used or exhibited a deadly weapon. Appellant requests a judgment of acquittal on the ground that the State failed to prove use or exhibition of a deadly weapon as an element of the offense or, alternatively, that we order the trial court's deadly-weapon finding stricken from the judgment.

When, as in this case, use or exhibition of a deadly weapon is an element of the offense and the State alleges the defendant's guilt under the law of parties, the State must prove the defendant knew a weapon would be used or exhibited in commission of the offense. *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (en banc). The jury's verdict of guilt necessarily constitutes an affirmative finding that the defendant was a party to the offense and knew a deadly weapon would be used or exhibited in commission of the offense, thus authorizing the trial court to enter a deadly weapon finding in the judgment. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2011) (requiring trial court to enter deadly weapon finding

11

in judgment if jury affirmatively finds defendant was a party to the offense and knew deadly weapon would be used or exhibited during commission of that offense).

Appellant argues the only evidence he knew a deadly weapon would be used or exhibited in commission of the robbery was Roberts's accomplice-witness testimony that Johnson requested the gun and appellant handed it to him. However, the requirement of accomplice-witness corroboration does not apply to testimony of an accomplice witness regarding use or exhibition of a deadly weapon. *Vasquez v. State*, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001). Specifically, it is not necessary for non-accomplice evidence to connect the defendant with every element of the crime. *Id.* Nevertheless, as mentioned above, the jury could have rationally inferred from appellant's statement to his grandmother that appellant provided the gun used in commission of the robbery. Therefore, the evidence is legally sufficient to support the jury's finding that appellant knew a deadly weapon would be used or exhibited in commission of the offense. Accordingly, the trial court did not err by entering a deadly-weapon finding in the judgment. We overrule appellant's second issue relative to the aggravated-robbery conviction.

### B.     Burglary of a Habitation

A person commits burglary of a habitation "if, without the effective consent of the owner, the person . . . enters a habitation . . . with intent to commit . . . theft." Tex. Penal Code Ann. § 30.02(a)(1) (West 2011). In the first issue of his brief challenging the burglary conviction, appellant contends the evidence is legally insufficient because the State relied on appellant's possession of the stolen property to prove the offense without establishing appellant's explanation for possession was false or unreasonable.

Appellant refers to the principle that Texas law "has long permitted the conviction of a person for theft if the evidence shows him to have been found in possession of recently stolen property without offering an explanation inconsistent with guilt when first called upon directly or circumstantially to do so." *Chavez v. State*, 843 S.W.2d 586, 587 (Tex. Crim. App. 1992) (citing *Sutherlin v. State*, 682 S.W.2d 546, 549 (Tex. Crim. App. 1984)); *James v. State*, 48 S.W.3d 482, 485 (Tex. App.—Houston [14th Dist.] 2001, no

12

pet.); *see Poncio v. State*, 185 S.W.3d 904, 904–05 (Tex. Crim. App. 2006) (expressing that this rule is applicable to charge for burglary of a habitation). This unexplained possession of recently stolen property permits an inference of guilt for the offense of theft. *See Sutherlin*, 682 S.W.2d at 549; *James*, 48 S.W.3d at 485; *see also Chavez*, 843 S.W.2d at 587–88. However, before the inference may be invoked, the State must establish that the possession was personal, recent, unexplained, and involved a distinct and conscious assertion of a right to the property by the defendant. *Sutherlin*, 682 S.W.2d at 549; *see James*, 48 S.W.3d at 485. If a defendant explains his possession of stolen property when first called upon to do so, generally at the time of his arrest, the State must demonstrate the explanation is false or unreasonable. *See Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977); *James*, 48 S.W.3d at 485.

Appellant suggests that the State could not rely on this inference in the present case because appellant offered a reasonable explanation for possessing some of Mario Porras's stolen property: Roberts and Johnson committed the burglary and left the property in appellant's car after the robbery later that evening.

We disagree that the State "relied" on the unexplained-possession rule to prove appellant committed the burglary. Although the State presented evidence that, after the later robbery, appellant pawned some of Mario's stolen property and the police found other stolen items in appellant's vehicle, the State did not rely solely on this possession to prove appellant committed the burglary. Instead, Roberts testified that appellant appeared at Roberts's home after the burglary with some of Mario's stolen property. When Roberts inquired whether appellant burglarized the Porras home, appellant replied, "just keep it on the low." The jury could have reasonably construed this statement as an admission of guilt for the burglary. The trial court did not submit an accomplice-witness instruction in the jury charge for the burglary allegation. Consequently, there was no requirement for corroboration of Roberts's testimony relative to the burglary conviction.

Further actions by appellant also indicated consciousness of guilt with respect to the burglary. Again, the jury could have rationally inferred that, during his interview with Officer Reynolds, appellant also attempted to hide his involvement in the burglary

13

because he (1) did not drive his own car, which contained some of Mario's stolen property and the pawn ticket, to the police station, (2) failed to mention his claim that Roberts and Johnson left some stolen property in appellant's car, and (3) failed to mention he had already pawned some of the items.

Therefore, the fact that appellant was found in possession of some of Mario's property after the robbery was merely an additional circumstance the jury could have considered along with the other evidence outlined above when determining he committed the burglary. Consequently, the State was not required to prove appellant's explanation for possessing some of Mario's property after the robbery was unreasonable to support his conviction for burglary.

Regardless, contrary to appellant's suggestion, the State is required to refute only the explanation made when the defendant is first found in possession of recently stolen property—not an explanation made for the first time at trial. *See Barnes v. State*, 520 S.W.2d 401, 403 (Tex. Crim. App. 1975); *Simmons v. State*, 493 S.W.2d 937, 939 (Tex. Crim. App. 1973). Appellant does not suggest, and there is no indication in the record, that he presented his explanation when he was first found in possession of Mario's property.

Nonetheless, the jury could have determined that appellant's explanation at trial was unreasonable. Whether an explanation for possession of stolen property is reasonable is a question of fact, the fact-finder is not required to accept the defendant's explanation, and falsity may be shown by circumstantial evidence. *Prodan v. State*, 574 S.W.2d 100, 103 (Tex. Crim. App. 1978); *Adams*, 552 S.W.2d at 815; *James*, 48 S.W.3d at 486. In particular, the jury could have rationally rejected appellant's suggestion that (1) Roberts and Johnson coincidently burglarized the home of appellant's former girlfriend and left the stolen property in his car, and (2) Roberts and Johnson would take the risk and effort to commit a burglary yet simply abandon some of the stolen property for the benefit of a non-participant.

14

In sum, we conclude the evidence is legally sufficient to support the jury's finding that appellant committed burglary of a habitation. Accordingly, we overrule appellant's first issue relative to the burglary conviction.

### III. ADMISSION OF EVIDENCE DURING PUNISHMENT PHASE

In his second issue pertaining to the burglary conviction and third issue pertaining to the aggravated-robbery conviction, appellant contends the trial court erred during the punishment phase by admitting appellant's jail disciplinary records.

During the punishment phase, the State presented testimony from Deputy Kathleen Torres, who is employed in the Disciplinary and Grievance Office of the Harris County Sheriff's Department. Deputy Torres explained the disciplinary procedure applicable when an inmate in the Harris County jail is accused of violating a rule contained in the handbook provided to all inmates: Deputy Torres is presented with a report to review; the inmate enters a plea; a disciplinary committee conducts a hearing and renders a finding; and a finding of guilt results in probation or revocation of privileges.

The State also presented the office's written "disciplinary history" for appellant, which reflected that he was found guilty of the following violations over a ten-month period during his pre-trial detention for the present case: refusing to obey an order; presence in an unauthorized location; two separate occurrences of assault on another inmate; threatening staff; tattooing or possessing tattoo paraphernalia; failure to properly dress; extortion; disruptive conduct; simple assault; and threatening another inmate.[2] During her testimony, Deputy Torres relied on this document when reciting the violations listed therein.

Before Deputy Torres testified, appellant objected outside the jury's presence that evidence of his disciplinary history was "more prejudicial than probative under 403." The trial court overruled his objection. When the State offered the written history during

---

[2] Pursuant to the trial court's instruction, the State redacted the document before it was admitted to remove a record of offenses for which appellant was charged but found not guilty.

15

Deputy Torres's testimony, appellant renewed his objection, but the trial court admitted the document.

On appeal, appellant suggests the trial court erred by admitting evidence of his disciplinary history for three reasons: (1) the court failed to conduct the requisite balancing test relative to Texas Rule of Evidence 403; (2) the evidence was inadmissible under Rule 403; and (3) the evidence did not satisfy Texas Code of Criminal Procedure article 37.07(3)(a)(1) because the disciplinary violations could not be proved beyond a reasonable doubt.

During the punishment phase of a non-capital offense, the State may offer evidence pertaining to "any matter the court deems relevant to sentencing, including . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act."  Tex. Code Crim. Proc. Ann. art. 37.07, § (3)(a)(1) (West Supp. 2011).  "'Evidence is 'relevant to sentencing,' within the meaning of the statute, if the evidence is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'"  *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007) (quoting *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006)).

Admissibility of punishment-phase evidence that the trial court deems relevant is nonetheless subject to a Rule 403 analysis.  *See Rodriguez*, 203 S.W.3d at 843; *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000).  Under Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  Tex. R. Evid. 403.

A proper Rule 403 analysis includes, but is not limited to, the following factors: (1) probative value of the evidence; (2) potential to impress the jury "in some irrational,

but nevertheless indelible way"; (3) time needed to develop the evidence; and (4) the proponent's need for the evidence. *Rodriguez*, 203 S.W.3d at 843 (citing *Reese*, 33 S.W.3d at 240–41). We review the trial court's ruling on a Rule 403 objection for abuse of discretion. *Id.* at 841. We will uphold the ruling if it lies within the zone of reasonable disagreement. *Id.* at 841, 843.

With respect to appellant's initial complaint, once a Rule 403 objection is asserted, the trial court must engage in the balancing test required under that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *see Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). In this case, the trial court remarked that it found "the probative value" of the evidence outweighed "the prejudicial value," although it did not recite specific findings relative to the above-listed factors. However, a trial court is not required to *sua sponte* place on the record its findings or conclusions relative to the balancing test. *Williams*, 958 S.W.2d at 195. Rather, we presume the trial court engaged in the required balancing test once Rule 403 is invoked, and silence of the record does not imply otherwise. *Id.* at 195–96.

Relative to the substance of his Rule 403 complaint, appellant generally contends on appeal that his disciplinary history was inadmissible under Rule 403 but does not specifically advance any reason its probative value was substantially outweighed by the danger of unfair prejudice. Regardless, when objecting at trial, appellant argued that the history was more prejudicial than probative because of its "repetitive nature." However, to the extent appellant engaged in a pattern of prohibited conduct, the number of violations simply enhanced their probative value relative to demonstrating appellant's character for sentencing purposes. Accordingly, the trial court did not abuse its discretion by determining that the probative value of appellant's disciplinary history was not substantially outweighed by the danger of unfair prejudice.

Finally, appellant contends that the evidence of his disciplinary history did not satisfy Code of Criminal Procedure article 37.07(3)(a)(1) because the State could not prove the violations beyond a reasonable doubt. However, appellant failed to preserve error on this complaint. *See* Tex. R. App. P. 33.1(a) (providing that, to preserve issue for

appellate review, party must make timely objection or request to the trial court, sufficiently stating specific grounds for the requested ruling, unless apparent from the context, and obtain adverse ruling). Appellant's objection at trial was based solely on Rule 403; he advanced no objection that the evidence was inadmissible under article 37.07(3)(a)(1). *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that, to preserve error for appellate review, objection at trial must comport with the appellate complaint).

On cross-examination of Deputy Torres, appellant attempted to establish that the violations could not be proved beyond a reasonable doubt; Deputy Torres acknowledged that she had no personal knowledge of the violations shown on the document, the disciplinary committee is an administrative court, violations are not necessarily criminal offenses, and guilt is determined under a preponderance-of-the-evidence, rather than beyond-a-reasonable-doubt, standard. Further, in each jury charge pertaining to punishment, the trial court instructed the jury that it was permitted to consider an extraneous crime or bad act only if the State proved beyond a reasonable doubt appellant committed, or could be held criminally responsible for, such crime or act. However, appellant never raised the State's alleged inability to prove beyond a reasonable doubt that appellant committed the violations as a challenge to admissibility of the evidence in the first place. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996) (recognizing that trial court makes threshold determination for purposes of admissibility whether jury could rationally find beyond a reasonable doubt that defendant committed extraneous offense or bad act, but jury actually decides if State met burden of proof).

It is unclear whether appellant is suggesting on appeal that the State's alleged inability to prove the violations beyond a reasonable doubt constituted a reason their probative value was substantially outweighed by the danger of unfair prejudice. To the extent appellant presents his Article 37.07(3)(a)(1) complaint as a sub-issue of his Rule 403 contention, he nevertheless failed to preserve error. When objecting at trial based on Rule 403, appellant mentioned only the "repetitive nature" of the violations and did not

18

raise the State's alleged inability to prove the violations beyond a reasonable doubt as a reason they were inadmissible under Rule 403.

In sum, we overrule appellant's second issue pertaining to the burglary conviction and third issue pertaining to the aggravated-robbery conviction.

We affirm both of the trial court's judgments.


/s/     Charles W. Seymore
          Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).