

# NUMBER 13-11-00640-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**DAVID PAUL BROWN,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 435th District Court
### of Montgomery County, Texas.

---

# MEMORANDUM OPINION[1]

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant David Paul Brown appeals his conviction for injury to a child, a third-degree felony, *see* TEX. PENAL CODE ANN. § 22.04(a)(3) (West 2011), which was enhanced by three prior felony convictions, *see id*. § 12.42. A jury found appellant guilty

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

and assessed punishment at seventy-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. By three issues, which we have reordered, appellant argues: (1) the evidence was insufficient to convict; (2) the trial court erred by failing to admit appellant's photographs in lieu of the State's Exhibits 6 through 10; and (3) the trial court should have included appellant's requested "criminal negligence" instruction in the jury charge. By a fourth issue, appellant contends the cumulative impact of the foregoing errors requires reversal. We affirm.

## I. BACKGROUND[2]

Rhonda Pangarakis drove her son's girlfriend, E.H., to E.H.'s mother's house. Pangarakis testified that upon arriving at the house, E.H.'s fourteen-year-old brother, R.H.

> came running out of their trailer . . . and [E.H.'s] mother's boyfriend [appellant] came out of the house and I could hear [R.H.] screaming, "Help me; help me; David [appellant], don't hurt me." And he was saying, "[E.H.], help me." I got out of the car, and [R.H.] ran . . . two houses down and then onto a neighbor's porch. And [appellant] ran and—he chased him. I left my car, and I went after him, because I felt like [R.H.] was in trouble. I could hear him screaming from two doors down, and I went after him. When I got to the [neighbor's] trailer, [R.H.] was . . . in a fetal position . . . and [appellant] was—had both hands—fists closed and he was punching him under and over, under and over in the face and around the back area. I watched him land probably six to eight punches.

Pangarakis testified that she told appellant to stop hitting R.H. and that she was going to call the police, to which appellant allegedly responded, "Go ahead and call the police . . . [t]his kid is bad. He does things he's not supposed to do. He steals. He

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

takes things." Pangarakis stated that appellant then returned to his residence, but remarked to R.H. before leaving, "You're going to get it twice as bad when she leaves." Pangarakis left to call the police, and while she was on the telephone, she saw appellant return and continue hitting R.H. Appellant hit R.H. until another neighbor, James Finney, intervened.

Finney owned the property where the alleged assault occurred. Finney testified that he saw "someone on my porch swinging—swinging their arms." Finney ran toward his house, and as he neared it, he observed appellant standing over R.H., punching R.H. in the head and throat. Finney testified that he grabbed appellant "by his back, and I slung him off the porch." According to Finney, appellant said, "I caught him smoking my weed." Finney called 9-1-1.

Philippe Sibille, a Montgomery County Sheriff's Office deputy, responded to the call and spoke with R.H. R.H. informed him that appellant assaulted him because he tried to get a CD from appellant's room, and that appellant chased him to the neighbor's house and continued assaulting him there. Deputy Sibille observed and photographed R.H.'s injuries. Deputy Sibille's photographs of R.H.'s injuries were admitted over appellant's objection at trial that they appeared to be altered.

Two other witnesses testified that R.H. told them that appellant assaulted him: Gloria Nini, the Montgomery County Hospital District paramedic who responded to the scene; and Sheryl Gokey, an employee with the Texas Department of Family and Protective Services. Nini testified that R.H. told her that his mother's boyfriend hit him in

3

the face.   She described the injuries she saw on R.H. at the time she responded.   Gokey testified that R.H. told her:

> [R.H.] got the CD player and . . . some CD [from appellant's bedroom] . . . went to the living room; sat down . . . [Appellant] came in and asked him where the other CD's were . . . And [R.H.] told me that [appellant] hit him a couple of times on his head . . . I said, "What do you mean a couple?"   And he said, "Six or seven times." . . . And [R.H.] said he got up to try to go to the bedroom to get the CD's that [appellant] was requesting, and he heard a car door.   So [R.H.] ran outside.   Well, the car door was his sister.   It wasn't his mother.   He thought it was going to be his mother.   And at that time the sister said, "What's going on?"   And [appellant] says, "I've got this and I'm going to beat his a[__]."

R.H. further told her that appellant then chased him to a neighbor's porch and that he assaulted him there.

In contrast to the foregoing, R.H.'s mother (appellant's girlfriend) testified that R.H. did not appear to have been punched six or seven times in the face.   She acknowledged some scrapes and scratches on R.H., as shown in R.H.'s photographs, but stated the injuries did not look like wounds R.H. would have received had appellant repeatedly punched him.   R.H. testified that he sustained the injuries by slipping and falling.   He further stated, however, that he did not know how the marks on his face got there.   He further denied that appellant hit him in the face and denied talking to the police after the alleged assault.

R.H.'s sister, E.H., testified that R.H. ran out of the house screaming at the moment she arrived with Pangarakis.   E.H. acknowledged on cross-examination that R.H. "seemed fine" at the point he ran out of the house and that the injuries shown in the photographs were sustained as a result of appellant's assault on R.H.   E.H. affirmed that she saw knuckle or hand marks on R.H.

4

## II.  SUFFICIENCY OF THE EVIDENCE

By his third issue, appellant argues the evidence is legally insufficient to support a conviction on the basis that appellant injured complainant by striking the complainant's head with his hand.  Specifically, appellant argues that R.H.'s denial of the assault refuted the State's evidence.

### A.  Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence."  *Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc). When the record supports conflicting inferences, we presume the fact finder resolved the conflicts in favor of the prosecution and defer to that determination.  *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012) (citing *Jackson*, 323 S.W.3d at 326).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily

5

restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Relevant to this case, a person commits the offense of injury to a child if he intentionally or knowingly causes bodily injury to a child. TEX. PENAL CODE ANN. § 22.04(a)(3) (West 2011). A "child" is a person fourteen years old or younger. *Id.* § 22.04(c)(1). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a).[3] A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

**B.      Discussion**

R.H.'s testimony that no assault occurred stood in contrast to the testimony presented by Pangarakis, Finney, Deputy Sibille, Nini, Gokey, and to some extent, that of his sister. R.H.'s mother's testimony also conflicted with the testimony given by the State's witnesses and R.H.'s sister.

We defer to the jury's credibility analysis and reconciliation of the conflicting evidence. *See Garcia*, 367 S.W.3d at 687; *Westbrook*, 29 S.W.3d at 111. The jury believed the State's witnesses' testimony, which established that appellant repeatedly punched R.H. because R.H. allegedly took his property. We conclude that a rational jury could have found beyond a reasonable doubt that appellant intentionally or knowingly caused bodily injury to R.H. Appellant's third issue is overruled.

---

[3] Injury to a child is considered a "result-of-conduct" offense. *See Young v. State*, 341 S.W.3d 417, 423 n.21 (Tex. Crim. App. 2011); *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008).

## III. ADMISSION OF EVIDENCE

By his first issue, appellant argues the trial court erred when it denied his request to "present" photographs of the complainant's injuries to show that the photographs proffered by the State were allegedly altered, were not accurate depictions of the actual injures, and misled the jury as to a material fact. We review a trial court's decisions on evidence admissibility under an abuse-of-discretion standard, reversing only when the trial court's decision falls outside the zone of reasonable disagreement. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc).

Appellant objected to the admission of State's Exhibits 6-10, which were some of the photographs that Deputy Sibille took of R.H. Appellant informed the trial court:

> Your Honor, I'm not saying the State deliberately altered these photographs, but if you will notice, these lines, those are from the printer, and I think they would mislead the jury. I have—I have the exact same photos, if I could—if I could show them to you, Your Honor. I've got them—I got them developed at Walgreens. But you can see the lines plainly on there, and those aren't—those aren't injuries. They are not injury.

The trial court admitted the exhibits over appellant's objection.

Appellant did not request the trial court to admit his photographs. Rather, he contrasted his photographs with the State's photographs to support his contention that the State's photographs appeared altered. The trial court did not have the opportunity to rule on the contention raised on appeal, and appellant's issue is unpreserved because it does not comport with his trial objection. *See* TEX. R. APP. P. 33.1(a); *Heidelberg v.*

7

*State,* 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("[T]he legal basis of a complaint raised on appeal cannot vary from that raised at trial.").

Appellant's first issue is overruled.

## IV. CRIMINAL NEGLIGENCE INSTRUCTION

By his second issue, appellant argues the trial court erred when it denied his request for instructions to the jury regarding an applicable lesser-included offense. Specifically, appellant asserts the trial court should have included an instruction on criminal negligence.

## A. Standard of Review

The determination of whether the trial court should give a lesser-included offense instruction requested by a defendant requires a two step analysis: "(1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury?" *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). We review the first step de novo. *See id.* In applying the second prong, we look to see if there is some evidence in the record that would permit a rational jury to find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* at 145. The evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense. *Id.* Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included charge. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).

**B.     Discussion**

We first determine whether the offense of "criminal negligence" is a lesser-included offense of the intentional or knowing commission of the offense, for which appellant was indicted.   *See Rice*, 333 S.W.3d at 144.   Injury to a child can be committed intentionally, knowingly, recklessly, or with criminal negligence.   TEX. PENAL CODE ANN. § 22.04(a)(3) (West 2011).   The Texas Code of Criminal Procedure provides, in relevant part, that an offense is a lesser-included offense if it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission.   TEX. CRIM. PROC CODE ANN. art. 37.09(3) (West 2006).

We hold that criminally negligent bodily injury to a child is a lesser-included offense to intentional or knowing bodily injury to a child.   *See Hicks v. State*, 372 S.W.3d 649, 654 (Tex. Crim. App. 2012) (holding reckless bodily injury to a child is a lesser-included offense of intentional or knowing bodily injury to a child); *Gay v. State*, 235 S.W.3d 829, 832 (Tex. App.—Fort Worth 2007, pet. ref'd) (same); *Tissier v. State*, 792 S.W.2d 120, 124 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) ("We conclude that the lesser included offenses of recklessness and negligence simply require a less culpable mental state than does an offense which requires proof of an intentional act.").

We next look to see if there is any record evidence that supports appellant's requested jury instruction.   *See Rice*, 333 S.W.3d at 144.   A person acts with criminal negligence with respect to the result of his conduct when he ought to be aware of a substantial or unjustifiable risk that the result will occur; the risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of

9

care that an ordinary person would exercise under the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(d) (West 2011).

In support of his argument that the trial court should have instructed the jury on criminal negligence, appellant states in his brief, "There was a clear and distinct factual issue as to whether the Appellant was acting like he was going to hit [R.H.] to scare him, versus actually striking the complainant to cause bodily injury." Appellant further elaborates, "It is Appellant's contention that there was affirmative evidence that [appellant] did not, in fact, hit the complainant or cause the injuries as proffered by the State." He further asserts that a conflict in the evidence exists because R.H.'s mother testified that his injuries are attributable to "acne scarring or previous injuries not associated with any contact with appellant."

We note that appellant's assertions challenge the sufficiency of the evidence to prove the *actus reas*—that appellant ever hit R.H.; they do not establish that appellant did actually hit R.H. but that he did it with a lesser *mens rea*, namely criminal negligence. Nothing in the record supports a conclusion that if appellant was guilty of assaulting R.H., he was guilty of assaulting R.H. only with criminal negligence. *See Rice*, 333 S.W.3d at 145; *Hall*, 158 S.W.3d at 473. We conclude the lesser-included offense of criminally negligent bodily injury to a child was not a valid, rational alternative to the charged offense. *See Rice*, 333 S.W.3d at 145. Appellant's second issue is overruled.

## V.  CUMULATIVE IMPACT

By his fourth issue, appellant argues the cumulative impact of the first three alleged errors is so great that reversal is required. However, we overruled appellant's

10

first through third issues.  *See* TEX. R. APP. P. 47.1.  We are aware of no authority holding that non-errors may in their cumulative effect cause error.  *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).  Appellant's fourth issue is overruled.

## VI.  CONCLUSION

We affirm the trial court's judgment.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of September, 2013.

11